### MILES *v.* UNITED STATES.

1. On an indictment for bigamy, the first marriage may be proved by the admissions of the prisoner, and it is for the jury to determine whether what he said was an admission that he was actually and legally married according to the laws of the country where the marriage was solemnized.

2. As long as the fact of his first marriage is contested, the second wife is an incompetent witness. Where it has by other evidence been duly established to the satisfaction of the court, she may be admitted to prove her marriage with him.

3. On the trial of such an indictment, the United States challenged a juror for "actual bias." Three triers, appointed by the court conformably to the law of Utah, where the indictment was found, tried the challenge, and declared it to be true. *Held,* that their decision being by that law final, he was properly excluded from the panel.

4. Against the objection of the prisoner, jurors were interrogated by the United States as to their belief that the practice of polygamy is in obedience to the divine will and command. *Held,* that the objection was properly overruled.

5. This court cannot re-examine questions of fact upon a writ of error.

6. In a criminal case, the evidence upon which the jury are justified in finding a verdict of guilty must be sufficient to satisfy them of the prisoner's guilt beyond a reasonable doubt. *Held,* that the instruction by the court of original jurisdiction upon this point (*infra*, p. 309) furnishes him no just ground of exception.

ERROR to the Supreme Court of the Territory of Utah.
The facts are stated in the opinion of the court.

*Mr. Arthur Brown, Mr. W. N. Dusenberry,* and *Mr. E. D. Hoge* for the plaintiff in error.

*Mr. Assistant Attorney-General Smith, contra.*

MR. JUSTICE WOODS delivered the opinion of the court.

Sect. 5352 of the Revised Statutes of the United States declares : —

"Every person having a husband or wife living, who marries another, whether married or single, in a Territory or other place over which the United States has exclusive jurisdiction, is guilty of bigamy, and shall be punished by a fine of not more than five hundred dollars and by imprisonment for a term not more than five, years."

The plaintiff in error was indicted under this section in the Third District Court of Utah, at Salt Lake City. He was convicted. He appealed to the Supreme Court of the Territory, where the judgment of the District Court was affirmed.

That judgment is now brought to this court for review upon writ of error.

The indictment charged that the plaintiff in error, John Miles, did, on Oct. 24, 1878, at Salt Lake County, in the Territory of Utah, marry one Emily Spencer, and that afterwards, and while he was so married to Emily Spencer, and while she was still living, did, on the same day and at the same county, marry one Caroline Owens, the said Emily Spencer, his former wife, being still living and at that time his legal wife.

The criminal procedure of Utah is regulated by an act of the territorial legislature, passed Feb. 22, 1878. The following are the sections pertinent to this case, which prescribe the rules for the impanelling of juries : —

"SECT. 241. A particular cause of challenge is : —

"1. For such a bias as, when the existence of the facts is ascertained, in judgment of law, disqualifies the juror, and which is known in this act as implied bias.

"2. For the existence of a state of mind on the part of the juror which leads to a just inference, in reference to the case, that he will not act with entire impartiality, which is known in this act as actual bias.

"Sect. 246. If the facts are denied, the challenge *must* be tried as follows: (1.) If it be for implied bias, by the court; (2.) If it be for actual bias, by triers."

"Sect. 247. The triers are three impartial persons, not on the jury panel, appointed by the court. All challenges for actual bias *must* be tried by three triers thus appointed, a majority of whom may decide."

"Sect. 249. Upon the trial of a challenge to an individual juror, the juror challenged may be examined as a witness to prove or disprove the challenge, and must answer every question pertinent to the inquiry."

"Sect. 250. Other witnesses may also be examined on either side, and the rules of evidence applicable to the trial of other issues govern the admission or exclusion of evidence on the trial of the challenge."

"Sect. 252. On the trial of a challenge for actual bias, when the evidence is concluded, the court must instruct the triers that it is their duty to find the challenge true, if, in their opinion, the evidence warrants the conclusion that the juror has such a bias against the party challenging him as to render him not impartial; and that if, from the evidence, they believe him free from such bias, they must find the challenge not true; that a hypothetical opinion unaccompanied with malice or ill-will, founded on hearsay or information supposed to be true, is of itself no evidence of bias sufficient to disqualify a juror. The court can give no other instruction."

"Sect. 253. The triers must thereupon find the challenge either true or not true, and their decision is final. If they find it true, the juror must be excluded."

Upon the trial of the case in the District Court of the Territory, Oscar Dunn and Robert Patrick were called as jurors. They were challenged for actual bias, and sworn upon their *voire dire.* Three triers were appointed by the court to pass upon the challenges to the jurors. Dunn, in answer to questions propounded to him, testified that he believed polygamy to be right, that it was ordained of God, and that the revelations concerning it were revelations from God, and that those revelations should be obeyed, and that he who acted on them should not be convicted by the law of the land.

The juror was challenged by the prosecution "for actual bias for the existence of a state of mind on his part which led

to a just inference that he would not act with entire impar tiality."

.The triers found the challenge true, and the juror was rejected.

Robert Patrick was examined on his *voire dire*, and testified that he believed that the revelation given to Joseph Smith touching polygamy came from God, that it was one of God's laws to his people, and that he who practised polygamy, conscientiously believing that revelation to be from God, was doing God's will. He also testified that, in his opinion, the law of Congress was in conflict with that law of God; that Congress had the right to pass such a law; and that on the trial of a person who was in the practice of polygamy charged with bigamy he would consider it his duty, if satisfied by the evidence, to find the defendant guilty, and that he would do so.

The juror was challenged for actual bias, and the triers found the challenge true, and the juror was excused. A large number of other jurors were examined and challenged, and excused on the same grounds.

Upon the trial, evidence was given tending to show that a short time before the date laid in the indictment, Oct. 24, 1874, the plaintiff in error was in treaty for marrying, at or about the same time, three young women, namely, Emily Spencer, Caroline Owens, and Julia Spencer, and that there was a discussion between them on the question which should be the first wife; and that upon appeal to John Taylor, president of the Mormon Church, the plaintiff in error and the three women being present, it was decided by him that Emily Spencer, being the eldest, should be the first wife; Caroline Owens, being the next younger, the second; and Julia Spencer, being the youngest, the third wife; — that being according to the rules of the church.

It appeared further that marriages of persons belonging to the Mormon Church usually take place at what is called the Endowment House; that the ceremony is performed in secret, and the person who officiates is under a sacred obligation not to disclose the names of the parties to it.

It further appeared that on Oct. 24, 1878, the plaintiff in error was married to the said Caroline Owens, and that on the

night of that day he gave a wedding supper at the house of one Cannon, at which were present Emily Spencer, Caroline Owens, and others. Evidence tending to establish these facts having been given to the jury, the court permitted to be given in evidence the declarations made by the plaintiff in error, on that night, in presence of the company assembled, and on subsequent occasions, to the effect that Emily Spencer was his first wife.

Sect. 1604 of the Compiled Laws of Utah declares: "A husband shall not be a witness for or against his wife, nor a wife a witness for or against her husband."

Upon the trial, and after the evidence above recited had been given, tending, as the prosecution claimed, to prove the marriage of the plaintiff in error to Emily Spencer just before his marriage to Caroline Owens, the latter was offered as a witness against him to prove the same fact.

Thereupon the defendant admitted, in open court, the charge of the indictment that he had been married to Caroline Owens, and even offered testimony to prove it; but this was ruled out by the court.

The defendant, therefore, objected to the introduction of Caroline Owens as a witness against him, the objection being based on the statute just quoted.

The court overruled the objection and admitted her as a witness, and she gave testimony tending to prove the marriage of the plaintiff in error to Emily Spencer previous to his marriage with the witness.

It appeared from the evidence that the name of Caroline Owens's father was Maile, but that she had been adopted by an uncle and aunt named Owens, and had taken their name, by which she was called and known, but that, when she was baptized in the Mormon Church, she was required to be baptized in her father's name, and was married to Miles under that name.

The court, among other things, charged the jury as follows: —

"If you find from all the facts and circumstances proven in this case, and from the admissions of the defendant, or from either, that the defendant Miles married Emily Spencer, and

while she was yet living and his wife he married Caroline Owens, as charged in the indictment, your verdict should be guilty.

"A legal wife cannot, but when it appears in a case that the witness is not a legal wife, but a bigamous or plural wife, then she may testify against the bigamous husband, and her testimony should have just as much weight with the jury as any other witness, if the jury believe her statements to be true. And her evidence may be taken like the evidence of any other witness to prove either the first or second marriage. And so in this case you are at liberty to consider the testimony of Miss Caroline Owens, if you find from all the evidence in the case that she is a second and plural wife, and give it all the weight you think it entitled to, and may use it to prove the first marriage alleged, to wit, the marriage of defendant and Emily Spencer, or any other fact which in your opinion is proven by the testimony, if you believe it, as you do the testimony of any witness to prove any fact about which she has testified.

"The prisoner's guilt must be established beyond reasonable doubt. Proof beyond a reasonable doubt is such as will produce an abiding conviction in the mind to a moral certainty that the fact exists that is claimed to exist, so that you feel certain that it exists. A balance of proof is not sufficient. A juror in a criminal case ought not to condemn unless the evidence excludes from his mind all reasonable doubt; unless he be so convinced by the evidence, no matter what the class of the evidence, of the defendant's guilt, that a prudent man would feel safe to act upon that conviction in matters of the highest concern and importance to his own dearest personal interests."

The plaintiff in error alleges as ground of error the exclusion from the jury of Oscar Dunn, Robert Patrick, and others of the Mormon faith. He claims that the examination of the proposed jurors, and the rulings of the court, show that it was the deliberate purpose of the court to exclude from the jury every one who was of the Mormon faith. He insists that neither the court nor counsel had the right to inquire into the religious belief of the juror.

There is no complaint that the jury was not a fair and impartial one, or that any juror impanelled was disqualified.

Whether the exclusion of qualified jurors from the panel is a ground for setting aside the verdict and judgment on error, we do not find it necessary to decide.

It is insisted on behalf of the defendant in error that the excluded jurors were not qualified to sit in the case. In impanelling the jury the court was bound to follow the law of the Territory on that subject. *Clinton* v. *Englebrecht*, 13 Wall. 434; *Reynolds* v. *United States*, 98 U. S. 145.

The jurors excluded were objected to by the prosecution as disqualified from serving for actual bias.

The challenge for actual bias was tried by the triers appointed by the court, in accordance with the law of the Territory. The triers found the challenge true. By the same law their decision is declared to be final, and thereupon the jurors challenged must be excluded. The law was carefully followed. The jurors were found disqualified, and were, therefore, as required by the law, excluded from the panel.

It is evident from the examination of the jurors on their *voire dire*, that they believed that polygamy was ordained of God, and that the practice of polygamy was obedience to the will of God. At common law, this would have been ground for principal challenge of jurors of the same faith. 3 Bla. Com. 303. It needs no argument to show that a jury composed of men entertaining such a belief could not have been free from bias or prejudice on the trial for bigamy, of a person who entertained the same belief, and whose offence consisted in the act of living in polygamy. But whether the evidence of bias was sufficient or not, it was so found by the triers, and that was conclusive.

Whether or not that bias was founded on the religious belief of the juror, is entirely immaterial, if the bias existed. It has been held by this court, that on an indictment for bigamy it was no defence that the doctrines and practice of polygamy were a part of the religion of the accused. *Reynolds* v. *United States*, *supra.*

It could not, therefore, be an invasion of the constitutional or other rights of the juror called to try a party charged with bigamy, to inquire whether he himself was living in polygamy,

and whether he believed it to be in accordance with the divine will and command.

If the jurors themselves had no ground of complaint, it is clear the defendant had none.

We find nothing in the record in relation to the impanelling of the jury which would have required the Supreme Court of the Territory to set aside the verdict and the judgment of the District Court.

It is next assigned for error, that the court admitted the declarations and admissions of the plaintiff in error to prove the fact of his first marriage, and the charge of the court that the declarations of the accused were evidence proper to be considered by the jury as tending to prove an actual marriage, and that such marriage might be proven like any other fact, by the admissions of the defendant, or by circumstantial evidence, and that it was not necessary to prove it by witnesses who were present at the ceremony.

To hold that, on an indictment for bigamy, the first marriage can only be proven by eye-witnesses of the ceremony, is to apply to this offence a rule of evidence not applicable to any other.

The great weight of authority is adverse to the position of the plaintiff in error.

In *Regina* v. *Simmonsto* (1 Car. & Kir. 164), it was held that, on an indictment for bigamy, the first marriage may be proved by the admissions of the prisoner; and it is for the jury to determine whether what he said was an admission that he had been legally married according to the laws of the country where the marriage was solemnized.

The same view is sustained by the following cases: *Regina* v. *Upton*, cited in 1 Russell, Crimes (Greaves's ed.), 218; *Duchess of Kingston's Case*, 20 How. State Trials, 355; *Truman's Case*, 1 East, P. C. 470; *Cayford's Case*, 7 Me. 57; *Ham's Case*, 11 id. 391; *State* v. *Libby*, 44 id. 469; *State* v. *Hilton*, 3 Rich. (S. C.) 434; *State* v. *Britton*, 4 McCord (S. C.), 256; *Warner* v. *Commonwealth*, 2 Va. Cas. 595; *Norwood's Case*, 1 East, P. C. 470; *Commonwealth* v. *Murtagh*, 1 Ashm. (Pa.) 272; *Regina* v. *Newton*, 2 Moo. & R. 503; *State* v. *McDonald*, 25 Miss. 176; *Wolverton* v. *State*, 16 Ohio, 173; *State* v. *Seals*,

16 Ind. 3ō2; *Quin* v. *State*, 46 id. 725; *Arnold* v. *State*, 53 Ga. 574; *Cameron* v. *State*, 14 Ala. 546; *Brown* v. *State*, 52 id. 338; *Williams* v. *State*, 44 id. 24; *Commonwealth* v. *Jackson*, 11 Bush (Ky.), 679.

The declarations of the plaintiff in error touching his marriage with Emily Spencer, admitted in evidence against him, appear to have been deliberately and repeatedly made, and under such circumstances as tended to show that they had reference to a formal marriage contract between him and her.

We are of opinion that the District Court committed no error in admitting such declarations, or in its charge to the jury concerning them.

The charge of the court defining what is meant by the phrase "reasonable doubt" is assigned as ground of error.

The evidence upon which a jury is justified in returning a verdict of guilty must be sufficient to produce a conviction of guilt, to the exclusion of all reasonable doubt. Attempts to explain the term "reasonable doubt" do not usually result in making it any clearer to the minds of the jury. The language used in this case, however, was certainly very favorable to the accused, and is sustained by respectable authority. *Commonwealth* v. *Webster*, 5 Cush. (Mass.) 295; *Arnold* v. *State*, 23 Ind. 170; *State* v. *Nash*, 7 Iowa, 347; *State* v. *Ostrander*, 18 id. 435; *Donnelly* v. *State*, 2 Dutch. (N. J.) 601; *Winter* v. *State*, 20 Ala. 39; *Giles* v. *State*, 6 Ga. 276.

We think there was no error in the charge of which the plaintiff in error can justly complain.

The plaintiff in error next alleges that the description of the woman named in the indictment as the person with whom the crime of bigamy was committed, was not sufficiently specific, and that on the trial she turned out to be not Caroline Owens, but Caroline Maile.

The designation of Caroline Owens as the person with whom the second marriage was contracted is clearly sufficient. If it were not, it is too late after verdict to object. As to the fact, the jury has found that the person whom the plaintiff in error was charged to have married while his first wife was living, and still his legal wife, was Caroline Owens and not Caroline Maile, and that question is, therefore, conclusively settled by the ver-

dict. This court cannot re-examine questions of fact upon writ of error. Rev. Stat., sect. 1011.

The plaintiff in error lastly claims that the court erred in allowing Caroline Owens, the second wife, to give evidence against him touching his marriage with Emily Spencer, the alleged first wife; and in charging the jury that they might consider her testimony, if they found from all the evidence in the case that she was a second and plural wife.

This assignment of error, we think, is well founded.

The law of Utah declares that a husband shall not be a witness for or against his wife, nor a wife for or against her husband.

The marriage of the plaintiff in error with Caroline Owens was charged in the indictment and admitted by him upon the trial. The fact of his previous marriage with Emily Spencer was, therefore, the only issue in the case, and that was contested to the end of the trial. Until the fact of the marriage of Emily Spencer with the plaintiff in error was established, Caroline Owens was *prima facie* his wife, and she could not be used as a witness against him.

The ground upon which a second wife is admitted as a witness against her husband, in a prosecution for bigamy, is that she is shown not to be a real wife by proof of the fact that the accused had previously married another wife, who was still living and still his lawful wife. It is only in cases where the first marriage is not controverted, or has been duly established by other evidence, that the second wife is allowed to testify, and she can then be a witness to the second marriage, and not to the first.

The testimony of the second wife to prove the only controverted issue in the case, namely, the first marriage, cannot be given to the jury on the pretext that its purpose is to establish her competency. As her competency depends on proof of the first marriage, and that is the issue upon which the case turns, that issue must be established by other witnesses before the second wife is competent for any purpose. Even then she is not competent to prove the first marriage, for she cannot be admitted to prove a fact to the jury which must be established before she can testify at all.

Witnesses who are *prima facie* competent, but whose com petency is disputed, are allowed to give evidence on their *voire dire* to the court upon some collateral issue, on which their competency depends, but the testimony of a witness who is *prima facie* incompetent cannot be given to the jury upon the very issue in the case, in order to establish his competency, and at the same time prove the issue.

The authorities sustain these views.

Upon a prosecution for bigamy under the statute of 1 Jac., c. 11, it was said by Lord Chief Justice Hale: "The first and true wife is not allowed to be a witness against her husband, but I think it clear the second may be admitted to prove the second marriage, for she is not his wife, contrary to a sudden opinion delivered in July, 1664, at the Assizes in Surrey, in Arthur Armstrong's case, for she is not so much as his wife *de facto*." 1 Hale, P. C. 693.

So in East's Pleas of the Crown the rule is thus laid down: "The first and true wife cannot be a witness against her husband, nor *vice versa;* but the second may be admitted to prove the second marriage, for the first being proved she is not so much as wife *de facto*, but that must be first established." 1 East, P. C. 469. The text of East is supported by the following citation of authorities: 1 Hale, P. C. 693; 2 M. S. Sum. 331; *Ann Cheney's Case*, O. B. May, 1730, Sergt. Foster's Manuscript.

In Peake's Evidence (Norris), 248, it is said: "It is clearly settled that a woman who was never legally the wife of a man, though she has been in fact married to him, may be a witness against him; as in an indictment for bigamy, the first marriage being proved by other witnesses, the second wife may be examined to prove the marriage with her, for she is not *de jure* his wife."

Mr. Greenleaf, in his work on Evidence, vol. iii. sect. 206, says: "If the first marriage is clearly proved and not controverted, then the person with whom the second marriage was had may be admitted as a witness to prove the second marriage, as well as to other facts not tending to defeat the first or legalize the second. There it is conceived she would not be admitted to prove a fact showing that the first marriage was void, — such

as relationship within the degrees, or the like, — nor that the first wife was dead at the time of the second marriage, nor ought she to be admitted at all if the first marriage is in controversy."

The result of the authorities is that, as long as the fact of the first marriage is contested, the second wife cannot be admitted to prove it. When the first marriage is duly established by other evidence, to the satisfaction of the court, she may be admitted to prove the second marriage, but not the first, and the jury should have been so instructed.

In this case the injunction of the law of Utah, that the wife should not be a witness for or against her husband, was practically ignored by the court. After some evidence tending to show the marriage of plaintiff in error with Emily Spencer, but that fact being still in controversy, Caroline Owens, the second wife, was put upon the stand and allowed to testify to the first marriage, and the jury were, in effect, told by the court that if, from her evidence and that of other witnesses in the case, they were satisfied of the fact of the first marriage, then they might consider the evidence of Caroline Owens to prove the first marriage.

In other words, the evidence of a witness, *prima facie* incompetent, and whose competency could only be shown by proof of a fact which was the one contested issue in the case, was allowed to go to the jury to prove that issue and at the same time to establish the competency of the witness.

In this we think the court erred.

It is made clear by the record that polygamous marriages are so celebrated in Utah as to make the proof of polygamy very difficult. They are conducted in secret, and the persons by whom they are solemnized are under such obligations of secrecy that it is almost impossible to extract the facts from them when placed upon the witness stand. If both wives are excluded from testifying to the first marriage, as we think they should be under the existing rules of evidence, testimony sufficient to convict in a prosecution for polygamy in the Territory of Utah is hardly attainable. But this is not a consideration by which we can be influenced. We must administer the law as we find it. The remedy is with Congress, by enacting such a change

in the law of evidence in the Territory of Utah as to make both wives witnesses on indictments for bigamy.

For the error indicated the judgment of the Supreme Court of the Territory of Utah must be reversed and the cause re-manded to that court, to be by it remanded to the District Court, with directions to set aside the verdict and judgment and award a *venire facias de novo.*

*So ordered.*