862 P.2d 223

**STATE of Arizona, Appellee,**

v.

**Angela Denise DUZAN, Appellant.**

**No. 1 CA–CR 91–578.**

Court of Appeals of Arizona,
Division 1, Department B.

April 13, 1993.

Review Denied Nov. 30, 1993.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, Crane McClennen, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Garrett W. Simpson, Deputy Public Defender, Phoenix, for appellant.

## OPINION

EHRLICH, Presiding Judge.

Angela Denise Duzan ("defendant") appeals from her conviction for fraudulent schemes and artifices and disposition. We affirm.

## FACTS AND PROCEDURAL HISTORY [1]

The defendant was in charge of accounting operations for the M Company, a living trust partnership between J M and his wife with their children as beneficiaries.[2] Using herself and her boyfriend as signatories and her home address as that of the business, the defendant opened a bank account in the name of Citation Partnership, a venture in which the M Company was a partner, and deposited over $96,000 in M Company funds. She later withdrew the money

---

1. The facts are stated in the light most favorable to sustaining the verdict. *E.g., State v. Atwood,* 171 Ariz. 576, 596, 832 P.2d 593, 613 (1992), *cert. denied,* — U.S. —, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993).

2. The names of the victims have been abbreviated in the interest of their privacy.

and deposited it in her personal bank account.

The defendant was indicted for fraudulent schemes and artifices, a class 2 felony. She testified at trial that M encouraged her to open the business account and permitted her to take the money in exchange for sexual relations. M swore that the defendant was not permitted to take $96,856.39 from the account and denied that he repeatedly had requested that the defendant engage in sexual relations with him. The jury found the defendant guilty as charged.

The trial court suspended the imposition of sentence and placed the defendant on probation for seven years, a special term of which was that she pay $96,897.39 in restitution. The defendant timely appealed, raising as issues:

1) Whether the trial court erred in excluding three former employees' complaints naming M, as well as a statement by the defendant's former co-worker;

2) Whether the prosecutor's comments during closing argument deprived the defendant of a fair trial, including whether the trial court erred in permitting the state to argue punishment to the jury during its closing; and

3) Whether the trial court erred in its jury instruction on reasonable doubt.

## DISCUSSION

### 1. EVIDENTIARY RULINGS

#### a. Prior Lawsuits

Prior to trial, the state filed a motion *in limine* to preclude mention of three complaints filed by former employees against M and his company which included allegations of breach of contract, sexual harassment and discrimination, and intentional infliction of emotional distress. The state argued that the complaints were irrelevant and hearsay. Conceding that the complaints constituted hearsay, the defendant maintained that they nonetheless were admissible under Arizona Rules of Evidence ("Rules") 404 and 405(b) as evidence of M's prior bad acts and a pertinent character trait. The court held that, if M testi-

fied on direct examination that he never had been sued, the defendant could impeach his testimony with the complaints. M never referred to any lawsuit in his testimony.

During cross-examination, defense counsel inquired whether M had ever had an affair with a plaintiff in one of the complaints. The court sustained the state's objection. Defense counsel then asked M about another plaintiff. Without the jury present, defense counsel argued that he should be permitted to question M about the lawsuits because M's testimony left the impression that he had never had affairs. The court determined that it had been the defense and not the state which had opened the door about the complaints. There was no further examination of M.

After the state rested, the defendant reurged the admissibility of the former employees' litigation. The court ruled that the evidence was irrelevant and that its minimal probative value was outweighed by its prejudice.

On appeal, the defendant argues that she was denied a fair trial because the trial court excluded evidence admissible under Rules 404 and 405(b) to impeach M's plans, opportunities and motives and that the probative value of this evidence outweighed its prejudice. She further submits that M's statements on direct examination that his business existed solely to provide for his family opened the door for the defense to show with the complaints that its function also was to provide M with a "steady stream of female companionship."

A trial court has considerable discretion in determining the relevancy and admissibility of evidence; its decision will not be reversed absent an abuse of that discretion. *E.g., State v. Atwood,* 171 Ariz. 576, 634, 832 P.2d 593, 651 (1992), *cert. denied,* — U.S. —, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993); *State v. Hensley,* 142 Ariz. 598, 602, 691 P.2d 689, 693 (1984). The central issue at trial was whether the defendant knowingly obtained any benefit from the M Company by means of false or fraudulent pretenses. The complaints did not relate to

the authorization of an employee to open a bank account. It was within the court's broad discretion to decide that the fact that M and his company had been named by former employees in complaints alleging sexual harassment and breach of contract did not tend to prove or disprove any fact of consequence to the determination of the pending criminal action against the defendant and that the prejudice was greater than any probative value. *See* Ariz.R.Evid. 401, 403, 608(b); *see also State v. Taylor,* 169 Ariz. 121, 125, 817 P.2d 488, 492 (1991); *State v. Amaya–Ruiz,* 166 Ariz. 152, 167, 800 P.2d 1260, 1275 (1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2044, 114 L.Ed.2d 129 (1991).

### b. Former Co–Worker's Statement

The trial court further excluded as hearsay the defendant's statement on direct examination repeating a former co-worker's statement about the co-worker's alleged encounter with M. Although the defendant at trial failed to argue for the statement's admissibility, she maintains on appeal that the statement is allowable as an excited-utterance exception to the rule excluding hearsay. We will not consider this argument for the first time on appeal. *State v. Flores,* 160 Ariz. 235, 238, 772 P.2d 589, 592 (App.1989).

### 2. PROSECUTOR'S CLOSING REMARKS

■ The defendant challenges as fundamental error several of the prosecutor's statements during closing argument; she also argues that cumulatively they are prejudicial. We note preliminarily that the doctrine of cumulative error is not recognized in Arizona, *State v. Prince,* 160 Ariz. 268, 274, 772 P.2d 1121, 1127 (1989), absent related errors, *State v. Filipov,* 118 Ariz. 319, 323, 324, 325, 576 P.2d 507, 511, 512, 513 (App.1978).[3]

■ The defendant first contends that the prosecutor improperly expressed his personal belief about her guilt when he stated the following during rebuttal argument:

> [Defense counsel] continues to just tell you, oh, all those facts aren't in court. I submit to you they're crucial, because they show beyond a reasonable doubt that this defendant is a scheming, manipulative person. *I stand before you and tell you that she is.* [Emphasis added.]

Earlier, however, defense counsel had remarked:

> We got Angie over here. Oh, the prosecutor is going to tell you she's a cold, calculating, evil, vicious woman that goes around starting affairs with older men and takes their money. The prosecutor is allowed to say that. You're allowed to believe differently because you see her. Now she was sitting on the stand and— okay, I'm not unbiased. But look, I didn't see a cold, calculating woman out

---

**3.** The principle is, however, applied in at least twenty-six other states. *See Stumpf v. State,* 749 P.2d 880 (Alaska App.1988), *cert. denied,* 490 U.S. 1070, 109 S.Ct. 2075, 104 L.Ed.2d 639 (1989); *People v. Morris,* 53 Cal.3d 152, 279 Cal.Rptr. 720, 807 P.2d 949, *cert. denied,* —— U.S. ——, 112 S.Ct. 421, 116 L.Ed.2d 441 (1991); *People v. Rivers,* 727 P.2d 394 (Colo.App.1986); *Nowitzke v. State,* 572 So.2d 1346 (Fla.1990); *State v. Hirano,* 8 Haw.App. 330, 802 P.2d 482 (1990); *State v. Pizzuto,* 119 Idaho 742, 810 P.2d 680 (1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1268, 117 L.Ed.2d 495 (1992); *People v. Smith,* 141 Ill.2d 40, 152 Ill.Dec. 218, 565 N.E.2d 900 (1990); *Comm. v. Ayre,* 31 Mass.App.Ct. 17, 574 N.E.2d 415 (Mass.App.1991); *People v. Malone,* 180 Mich.App. 347, 447 N.W.2d 157 (1989); *State v. Watson,* 433 N.W.2d 110 (Minn.App. 1988); *State v. Clark,* 756 S.W.2d 565 (Mo.App. 1988); *State v. Campbell,* 241 Mont. 323, 787 P.2d 329 (1990); *State v. Kern,* 224 Neb. 177, 397 N.W.2d 23 (1986); *Aesoph v. State,* 102 Nev. 316, 721 P.2d 379 (1986); *State v. Rose,* 112 N.J. 454, 548 A.2d 1058 (1988); *State v. Jett,* 111 N.M. 309, 805 P.2d 78 (1991); *People v. Lourido,* 70 N.Y.2d 428, 522 N.Y.S.2d 98, 516 N.E.2d 1212 (1987); *State v. Emery,* 91 N.C.App. 24, 370 S.E.2d 456 (1988); *State v. Catlin,* 56 Ohio App.3d 75, 564 N.E.2d 750 (1990); *Peninger v. State,* 811 P.2d 609 (Okla.1991); *State v. Bennis,* 457 N.W.2d 843 (S.D.1990); *State v. Johnson,* 784 P.2d 1135 (Utah 1989); *State v. Wall,* 52 Wash.App. 665, 763 P.2d 462 (1988); *State v. Gibson,* 181 W.Va. 747, 384 S.E.2d 358 (1989); *State v. Jensen,* 141 Wis.2d 333, 415 N.W.2d 519 (App.1987); *Jennings v. State,* 806 P.2d 1299 (Wyo.1991), as well as at least two federal circuit courts of appeals. *United States v. Rivera,* 900 F.2d 1462 (10th Cir.1990); *United States v. Wallace,* 848 F.2d 1464 (9th Cir.1988).

there. I saw a frightened, fearful, tearful, hurt, insecure, timid woman.

■ Because the defendant failed to object to the prosecutor's statement, absent a finding of fundamental error, we will not reverse the conviction on this basis. *E.g.,* *State v. Hill,* 174 Ariz. 313, 321, 848 P.2d 1375, 1383 (1993); *State v. Cook,* 170 Ariz. 40, 51, 821 P.2d 731, 742 (1991), *cert. denied,* ––– U.S. –––, 113 S.Ct. 137, 121 L.Ed.2d 90 (1992).

■ There are two types of prosecutorial vouching: "(1) when the prosecutor places the prestige of the government behind its witness, and (2) where the prosecutor suggests that information not presented to the jury supports the witness's testimony." *State v. Dumaine,* 162 Ariz. 392, 401, 783 P.2d 1184, 1193 (1989). A prosecutor must avoid assertions of personal knowledge. *State v. Salcido,* 140 Ariz. 342, 344, 681 P.2d 925, 927 (App.1984); *see also* E.R. 3.4(e) (lawyer prohibited from stating at trial a personal opinion as to the credibility of a witness). However, misconduct alone does not necessitate reversal unless, as a result, the defendant was denied a fair trial. *E.g., Atwood,* 171 Ariz. at 608, 832 P.2d at 625; *State v. Hernandez,* 170 Ariz. 301, 307, 823 P.2d 1309, 1315 (App.1991).

While the prosecutor improperly asserted his opinion about the defendant, we do not find that the comment deprived her of a fair trial. First, the prosecutor's remark was in response to defense counsel's description of how he anticipated the prosecutor would characterize the defendant. *See* *State v. Alvarez,* 145 Ariz. 370, 373, 701 P.2d 1178, 1181 (1985). Second, it was preceded by the prosecutor's permissible comment that "[the facts] show beyond a reasonable doubt that this defendant is a scheming, manipulative person." Even further, the jury was instructed soon after the remark that counsel's comments during opening and closing arguments were not evidence. *See State v. Tuzon,* 118 Ariz. 205, 208, 575 P.2d 1231, 1234 (1978) (closing arguments and jury instructions considered together in determining whether prosecutor's statement constituted error). We

therefore find that while this remark was an improper response, it was not either an invitation to the jury to consider matters not properly before it or an example of the prosecutor placing the prestige of the government behind its witness.

■ The defendant next submits that the prosecutor argued improperly that even if M had told her to take the money, she was guilty of fraudulent schemes because the Internal Revenue Service and Mrs. M had not approved. The defendant apparently relies on the following remarks by the prosecutor:

> The Court will instruct you that an intent to defraud is an intent to mislead another person for the purpose of gaining some material benefit or for the purpose of inducing any person to part with property or to change position. Did the defendant get benefits? Yes. Did she get property? Yes. *Did she deceive people? Well, I asked her. Mrs. [M] was part of that company. Did she give consent? No. Well, did she deceive? Yes. How about the IRS? Were they deceived? Yes.* The Court isn't going to tell you we have to prove that [M] personally was deceived. In fact, I expect the Court will instruct you that any injury to or reliance by a victim is not a necessary element which the prosecutor must prove for this crime. [Emphasis added.]

He later added:

> If you believe the State's case and all of the evidence is uncontroverted, then you should find her guilty. I submit that if you believe her testimony, you should find her guilty because the M Company was defrauded. [Mrs. M] never gave her permission or consent. That was kept from her just as it was kept from the IRS. I think that's clear. Under either version, whether you believe me or believe her, she's guilty.

The prosecutor's statements about Mrs. M and the IRS were arguably misleading as to the elements of the alleged offense. However, in the absence of the defendant's objection and because the jury was proper-

ly instructed on the elements of fraudulent schemes and artifices, including that the scheme must have been devised with the intent to defraud and that injury to or reliance by a victim is not a necessary element of this offense, *see* Ariz.Rev.Stat. Ann. section ("A.R.S. §") 13–2310, we do not find that this comment deprived the defendant of a fair trial. *See Hill,* 174 Ariz. at 321, 848 P.2d at 1383; *Cook,* 170 Ariz. at 51, 821 P.2d at 742; *Tuzon,* 118 Ariz. at 208, 575 P.2d at 1234.

The defendant next maintains that the trial court abused its discretion in permitting the prosecutor to argue punishment to the jury. During rebuttal closing argument, the prosecutor stated:

Defendants do get on the stand and they lie. I don't think that should surprise anyone. If anyone in this courtroom had a motive to stand before you and lie, it is this defendant, Angela Duzan, because she is the one that is facing this conviction and this charge. Part of convicting her might result in her having to pay back restitution, that $97,000 that she stole from the [M] Company.

Defense counsel objected on the ground that the prosecutor was improperly discussing punishment and the trial court sustained the objection. Moments later, the prosecutor remarked:

[M] wanted to have the right, the chance to stand up before a jury and look this woman in the eye and say that's a lie. And you will not take my name. You may take my money, but you will not steal my name. Yes, he didn't appear to be too happy with [defense counsel]. Although he hadn't been interviewed by [defense counsel], he had been interviewed by [counsel's] investigator about these matters. He knew what the allegations were. He was angry then. He was angry and he testified. I don't blame him. I don't mean blame him at all. He said why didn't they sue her for that money? I think that's what his comment was to you. *I think I already said to you, obviously, that she may*

*have to pay it back if she's convicted.* That only stands to reason, doesn't it? [M] knows that. [Emphasis added.]

Defense counsel again objected and this time the court ruled that, in context, it was a fair comment.

First, an order of restitution is an attempt to restore the victim, not punishment. *E.g., State v. Fancher,* 169 Ariz. 266, 267, 818 P.2d 251, 252 (App.1991). Second, prosecutorial comments which are fair rebuttal to comments made initially by the defense are acceptable. *Alvarez,* 145 Ariz. at 373, 701 P.2d at 1181; *Hernandez,* 170 Ariz. at 307–08, 823 P.2d at 1315–16. In this case, the prosecutor was responding to defense counsel's earlier remark:

You're here to decide Angie's motive. They certainly never sued her. Nobody ever sued her for any of this money. I guess if I had $150 million and it was $100,000, that's not very much money.

The prosecutor's comment also was a fair reference to redirect examination, during which the defendant was questioned whether M or anybody representing him ever had tried to collect any money from her or sue her for the money. Despite the defendant's assertions, defense counsel raised the issue of a potential method of reimbursement for the money the defendant took from M. Further, soon after the allegedly improper remark, the jury was instructed that, in deciding the defendant's guilt, it was not to consider the possible punishment and cautioned that counsel's statements during closing arguments were not evidence. *See Tuzon,* 118 Ariz. at 208, 575 P.2d at 1234.

3. REASONABLE DOUBT JURY INSTRUCTION

During trial, defense counsel requested a jury instruction defining reasonable doubt. The court noted that the state had requested such an instruction and the court would allow it—if both parties agreed.[4] Before the defendant called her

---

**4.** The trial court apparently was cognizant of the uncertainty surrounding any attempt to de-

fine "reasonable doubt." *E.g., Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 137–38, 99

final witness, counsel received copies of the court's suggested instructions, including the one at issue, given after closing argument:

> The term reasonable doubt means doubt based upon reason. This does not mean imaginary or possible doubt. It is a doubt which may arise in your minds after a careful and impartial consideration of all the evidence or from the lack of evidence.

The defendant neither requested a modification of the instruction nor objected to its being given.[5]

The defendant now argues that the court committed fundamental error by giving this instruction because it violated her right to procedural due process. She specifically maintains that because it excluded a juror's "possible" doubt, it allowed the jury to find guilt based upon a degree of proof less than that constitutionally required. She further argues that, without a cautionary instruction, the definition unconstitutionally shifted the burden of proof to the defendant. We do not agree.

■■■ The defendant's failure to object to the jury instruction waives any challenge on appeal absent fundamental error. Ariz. R.Crim.P. 21.3(c); *e.g.*, *State v. Gendron*, 168 Ariz. 153, 154, 812 P.2d 626, 627 (1991); *State v. Bracy*, 145 Ariz. 520, 535, 703 P.2d 464, 479 (1985), *cert. denied*, 474 U.S. 1110, 106 S.Ct. 898, 88 L.Ed.2d 932 (1986). The charge at issue is identical to the definition following Recommended Arizona Jury Instruction Standard Criminal 5 "Presumption of Innocence—Reasonable Doubt" (1989) as an optional instruction explaining

the meaning of reasonable doubt, although a majority of the drafting committee believed that a definition was "ineffective." The same definition was included in a reasonable-doubt instruction in *State v. Mays*, 105 Ariz. 47, 49, 459 P.2d 307, 309 (1969), in which case the supreme court held that this paragraph "undoubtedly define[d] reasonable doubt in traditionally acceptable terms." Similarly, in *State v. White*, the supreme court held that an instruction containing essentially the same definition of reasonable doubt as the one at issue was "in and of itself, adequate," 160 Ariz. 24, 31–32, 770 P.2d 328, 336–37 (1989). *See also State v. Salazar*, 173 Ariz. 399, 408, 410, 844 P.2d 566, 575, 577 (1992) (upon appellate court's implicit fundamental error review, instruction including same definition of reasonable doubt accepted).

The explanation at issue is similar to a jury instruction in *Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 137–38, 99 L.Ed. 150 (1954), which the Supreme Court held did not mislead a jury into finding no reasonable doubt when in fact there was some. The Court opined, however, and we agree, that a definition of "reasonable doubt" does "not usually result in making it any clearer to the minds of the jury." *Id.*, quoting *Miles v. United States*, 103 U.S. 304, 312, 26 L.Ed. 481 (1880); *see State v. Carr*, 108 Ariz. 203, 205, 495 P.2d 134, 136 (1972).[6]

In this case, we consider the jury instructions as a whole, the defendant's desire for an instruction defining reasonable doubt and acquiescence in the state's proffered

---

L.Ed. 150 (1954), quoting *Miles v. United States*, 103 U.S. 304, 312, 26 L.Ed. 481 (1880) ("Attempts to explain the term 'reasonable doubt' do not usually result in making it any clearer to the minds of the jury."); *State v. Bracy*, 145 Ariz. 520, 535, 703 P.2d 464, 479 (1985) (trial court need not define "reasonable doubt," although not error to do so), *cert. denied*, 474 U.S. 1110, 106 S.Ct. 898, 88 L.Ed.2d 932 (1986); *State v. Carr*, 108 Ariz. 203, 205, 495 P.2d 134, 136 (1972) ("approv[ing] of the recent trend to keep instructions on reasonable doubt simple since the attempts to explain and define it may be more perplexing than helpful.").

5. The state's requested jury instructions submitted to the trial court and a part of this court's record contained the definition of reasonable doubt read to the jury. However, the record of instructions which the defendant submitted does not contain an instruction regarding reasonable doubt or its definition.

6. In *Cage v. Louisiana*, 498 U.S. 39, 39–40, 111 S.Ct. 328, 329, 112 L.Ed.2d 339 (1990), the Court reversed a conviction upon a flawed—and markedly different—definition of reasonable doubt, one that likened reasonable doubt to "grave uncertainty" and required that the juror have a "moral certainty" that the defendant was guilty.

**470**

instruction, and the fact that similar versions of the instruction at issue have been upheld by the United States and Arizona Supreme Courts. Given this context, the charge defining reasonable doubt did not constitute fundamental error.

### CONCLUSION

We have searched the record on appeal for fundamental error pursuant to A.R.S. § 13–4035 and have found none. Accordingly, we affirm the defendant's conviction and disposition.

JACOBSON and GARBARINO, JJ., concur.