NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JERMAINE PLEDGER, *Appellant.*

No. 1 CA-CR 12-0604
FILED 1-8-2015

Appeal from the Superior Court in Maricopa County
No.  CR2011-005417-001
The Honorable Robert E. Miles, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender, Phoenix
By Peg Green
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge John C. Gemmill delivered the decision of the Court, in which Presiding Judge Maurice Portley and Judge Kent E. Cattani joined.

G E M M I L L**,** Judge:

¶1  Jermaine Pledger appeals his convictions and sentences for conspiracy to commit possession of marijuana for sale, possession of marijuana for sale, armed robbery, kidnapping, misconduct involving weapons, misconduct involving body armor, and two counts of aggravated assault. Pledger argues the prosecutor engaged in misconduct when she vouched for a witness during closing argument and that the second count of aggravated assault could not be a class 2 felony because the State failed to prove Pledger knew the victim was a peace officer engaged in the execution of official duties. We have jurisdiction pursuant to Arizona Constitution, Article 6, Section 9, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A) (2003), 13-4031 (2010) and 13-4033 (2010). We address the first issue — alleged prosecutorial misconduct in the form of vouching — in this memorandum decision. We address the second issue — involving statutory interpretation — in a published opinion filed contemporaneously with this decision. For the reasons explained below and in the accompanying opinion, we affirm Pledger's convictions and sentences.

## BACKGROUND

¶2  Pledger sought to purchase approximately 170 pounds of marijuana from "Ruiz." Led by Pledger, Ruiz eventually drove a vehicle containing 170 pounds of marijuana to a residence. Ruiz parked the vehicle in the garage, and Pledger closed the garage door. As Ruiz walked into the residence from the garage, another person struck Ruiz in the chest with a handgun and told him it was "a rip," meaning they were going to steal the marijuana. Pledger and two other armed men then held Ruiz in the residence at gunpoint. Pledger and his accomplices were unaware that Ruiz was a paid informant working with an undercover police officer who was observing the residence from an unmarked car parked up the street.

¶3  Believing they would kill him, Ruiz fled through the back door of the residence when the opportunity arose. Pledger and his two accomplices then fled the house. Pledger and one accomplice fled in Pledger's vehicle, while the third accomplice fled in Ruiz's vehicle with the marijuana.

¶4  Ruiz ran to the undercover officer and informed him it was a "drug rip." The officer and Ruiz pursued Pledger's vehicle and eventually found it stopped in an industrial cul-de-sac. The officer stopped his vehicle up the street from the cul-de-sac, retrieved a bullet-proof-vest from the trunk and put it on in a manner that he hoped would allow Pledger and his accomplice to see the word "POLICE" emblazoned in yellow letters on the

vest. Because he was in plain clothes, the officer hoped this would prevent Pledger and his accomplice from taking any action against them.

¶5          After the officer got back in his vehicle, Pledger drove straight at him. As Pledger's car approached, Pledger lowered his driver's window, held a gun out the window, and pointed it at the officer. Although the officer feared that Pledger would shoot, Pledger drove past the officer's vehicle without firing. Other officers eventually apprehended Pledger.

## ALLEGED PROSECUTORIAL MISCONDUCT

¶6          Pledger contends the prosecutor engaged in misconduct during her rebuttal argument when she allegedly vouched for the credibility of Ruiz.

¶7          In his closing argument, Pledger's counsel argued, "Well, we know before [Ruiz] ever was brought into this that he lied to police twice. So we have a liar to start. So we have a liar coming into this courtroom when another man is on trial, and you're just supposed to accept what he says because he's in the courtroom? Think about that." Pledger's counsel continued, "Basically, what I'm saying is that you need to disregard everything that he said, because that's justice. Think about that person that testified. Think about the inconsistencies he talked about, okay, and let me talk about those." After counsel discussed alleged inconsistencies in Ruiz's testimony, he argued, "Do we, as a society, as a criminal justice system, use that to convict somebody? Is that what we do?"

¶8          After he discussed more alleged inconsistencies in Ruiz's testimony, Pledger's counsel further argued:

> Let's talk about the ridiculous things that [Ruiz] says that trump everything else that he says, where you cannot derive or find a fact from him.
>
> He goes on a monologue about how the police get no credit. They risk their lives every day. He talks about he's found the love of his life and this is why he's snitching out Jermaine Pledger, because he found the love of his life.
>
> And then he tries to cry. I didn't see any tears. I saw him trying to cry. That's ridiculous. Does that trump everything else that he talks about? This is serious. This is a serious situation, a man is on trial. Are we going to accept that? Can you accept that?

Can you accept his credibility, period? You can't. He's working for cash. He's working for straight cash. He keeps working after this happens. He gets pulled over. He's facing potential charges. And there's motive, bias – you look at the credibility of witnesses instruction – all over the place.

What I submit to you is certain ridiculous things that he said in this trial that, using your common sense, you could almost laugh at. That trumps the rest of his testimony to the extent you need to reject it, because it's not fair to try to derive facts from it otherwise. That's not justice.

¶9 In rebuttal, the prosecutor argued:

[Ruiz] stood in this courtroom, right where I'm standing, held his hand up and swore to tell the truth. He was honest with you when he told you that he lied to the police when he was stopped with $30,000 in his car. He was honest with you in telling you that the lied to the police when he had 80 pounds of marijuana in his car. He was honest with you when he told you that at that point in his life he was working for a drug trafficking organization, and he was honest with you when he relayed the events that happened between January 26th, 2011 and February 16th, 2011.[1]

¶10 Pledger argues this portion of the prosecutor's rebuttal vouched for the credibility of Ruiz. "Two forms of impermissible prosecutorial vouching exist: (1) when the prosecutor places the prestige of the government behind its witness, and (2) where the prosecutor suggests that information not presented to the jury supports the witness's testimony. In addition, a lawyer is prohibited from asserting personal knowledge of acts in issue before the tribunal unless he testifies as a witness." *State v. Bible*, 175 Ariz. 549, 601, 858 P.2d 1152, 1204 (1993). Pledger argues the prosecutor's rebuttal placed the prestige of the government behind Ruiz and constituted an expression of the prosecutor's personal opinion that Ruiz was truthful.

¶11 Pledger concedes, however, that he raised no objection below. A failure to object to alleged prosecutorial misconduct at the time of trial waives the issue absent fundamental error. *State v. Wood*, 180 Ariz. 53, 66,

---

[1] This is the only portion of the prosecutor's argument Pledger identified as improper in his opening brief.

881 P.2d 1158, 1171 (1994). "To establish fundamental error, [a defendant] must show that the error complained of goes to the foundation of his case, takes away a right that is essential to his defense, and is of such magnitude that he could not have received a fair trial." *State v. Henderson*, 210 Ariz. 561, 568, ¶ 24, 115 P.3d 601, 608 (2005). Even when a defendant has established fundamental error, the defendant must still demonstrate the error was prejudicial. *Id*. at ¶ 26. In the context of whether a prosecutor's conduct amounts to fundamental error, we focus our inquiry on the probability the conduct influenced the jury and whether the conduct denied the defendant a fair trial. *Wood*, 180 Ariz. at 66, 881 P.2d at 1171. "The focus is on the fairness of the trial, not the culpability of the prosecutor." *Bible*, 175 Ariz. at 601, 858 P.2d at 1204.

¶12 We find no error, fundamental or otherwise. Prosecutors have wide latitude in presenting closing arguments. *State v. Jones*, 197 Ariz. 290, 305, ¶37, 4 P.3d 345, 360 (2000). A prosecutor may characterize a witness as truthful when the argument is sufficiently linked to the evidence and the prosecutor does not place the prestige of the government behind the witness or suggest that information not before the jury supports the testimony. *See State v. Corona*, 188 Ariz. 85, 91, 932 P.2d 1356, 1362 (App. 1997).

¶13 Further, "[p]rosecutorial comments which are fair rebuttal to comments made initially by the defense are acceptable." *State v. Duzan*, 176 Ariz. 463, 468, 862 P.2d 223, 228 (App. 1993). Here, the prosecutor's argument was a fair rebuttal to Pledger's counsel's attack on Ruiz's credibility. The prosecutor's argument addressed evidence introduced at trial that counsel referenced directly and indirectly in his attack on Ruiz: how Ruiz admitted he lied to police when stopped with $30,000 in his car, how Ruiz admitted he lied to police when he was later stopped with a large quantity of marijuana in his car, and how Ruiz admitted he had worked for a drug organization. It was fair rebuttal for the prosecutor to argue that Ruiz's honesty regarding this unfavorable evidence showed he was also honest when he testified about the events that led to the charges against Pledger. Further, the prosecutor did so in a manner that did not place the prestige of the government behind Ruiz, did not suggest that information not before the jury supported Ruiz's testimony, and did not express the prosecutor's personal opinion.

## CONCLUSION

¶14 For the reasons stated in the accompanying opinion and herein, we find no error and we affirm Pledger's convictions and sentences.