UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:    Judges Ortiz, Lorish and Senior Judge Petty
Argued by videoconference


ROBERT LEE WEBB

MEMORANDUM OPINION[*] BY
v.    Record No. 0154-23-3    JUDGE WILLIAM G. PETTY
MAY 7, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
Stacey W. Moreau, Judge

Joseph A. Sanzone (Sanzone & Baker, L.L.P., on brief), for
appellant.

David A. Stock, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


A jury convicted Robert Lee Webb of aggravated sexual battery.[1]  On appeal, Webb

challenges the trial court's refusal of a jury instruction addressing circumstantial evidence.  Finding

no abuse of discretion, we affirm the trial court's judgment.

BACKGROUND

On appeal, we review the evidence "in the 'light most favorable' to the Commonwealth,

the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  Doing so requires us to "discard the

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] The trial court dismissed a rape charge and an aggravated sexual battery change, and the
jury acquitted Webb of another rape charge.

credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

During the summer of 2021, Webb lived in a residence with his mother and father, Rebecca and Ronnie, and his two brothers, Riley and Ryan. One evening, Webb's 13-year-old niece, K.B., stayed overnight at the residence. While K.B. and Webb were alone in his bedroom playing video games, Webb forced K.B. onto his bed, reached his hand under her shirt, and touched her breasts. He then pulled K.B.'s pants and undergarments below her knees and "penetrate[d] [her] vagina" with his penis. When Webb withdrew his penis, he "put his arm around" K.B. and they fell asleep. A few minutes later, Ronnie entered Webb's bedroom, wakened K.B., and escorted her to Rebecca's bedroom to spend the night. K.B. urinated before going to bed and felt a "burning sensation." K.B. did not report her abuse to Webb's family.

When K.B.'s mother picked her up the next morning, she noticed that K.B. had a "bruise" on her "leg or her arm" that had not been there before K.B. visited Webb's residence. K.B. immediately "covered herself up with a blanket" and refused to discuss the bruise. When they arrived home, K.B. withdrew to her bedroom. Later that day, she noticed that her "[v]aginal area" was "ripp[ed]" and "bleeding" but she did not disclose the injury or her abuse to her mother. In the following weeks, K.B. stopped interacting with Webb, which was unusual because they had been close friends. Several months later, K.B. disclosed her sexual abuse to her mother, who then reported it to police. At trial, K.B. testified that she did not report her sexual abuse immediately or seek treatment for her injury because she "felt ashamed."

A forensic nurse examined K.B. and determined that she did not have any apparent injuries to her vaginal area, although the nurse opined that "acute" injuries from sexual assault typically heal within "two weeks." There was also a "notch" in K.B.'s hymen that the nurse opined typically did not appear in 13 year olds "[w]ithout sexual activity," although the notch

may have been congenital. The nurse further opined that painful urination was a common symptom of vaginal tearing.

A few days later, Pittsylvania County Sheriff's Investigator Kelly Hendrix went to Webb's residence and posted her contact information on the front door. Neither Webb nor his family members contacted her to discuss the incident.

At trial, Webb denied that he had sexually abused K.B. Webb also called Riley, Ryan, Ronnie, and Rebecca, who generally testified that during K.B.'s visit, she, Webb, and Riley played video games in Webb's bedroom and watched a movie for "[a] couple hours" without incident. During that time, Ryan brought them pizza from the kitchen before retiring to his bedroom. Ronnie was in the living room watching television. Neither Riley, Ryan, nor Ronnie saw or heard anything unusual. Around 11:30 p.m., Rebecca arrived home from work and saw K.B. and Webb sitting together on his bed. Later that night, she passed Webb's bedroom again and saw that K.B. and Webb were "still together sitting on the bed." About "ten minutes" later, Riley notified Ronnie that K.B. and Webb were asleep in Webb's bedroom, so Ronnie wakened K.B. and escorted her to Rebecca's bedroom to spend the night.

Riley, Ryan, Ronnie, and Rebecca acknowledged that they did not speak to police about the incident. Moreover, Ronnie and Rebecca were unaware that Investigator Hendrix had posted her contact information on the door of their residence. In rebuttal, Investigator Hendrix testified that she left her contact information on the front door of the Webbs' residence in mid-December and had attempted to contact the family several times without success.

The trial court provided Jury Instruction 1, which stated:

> The defendant is presumed to be innocent. You should not assume that the defendant is guilty because he has been indicted and is on trial. The presumption of innocence remains with the defendant throughout the trial and is enough to require you to find the defendant not guilty unless and until the Commonwealth

proves each and every element of each offense beyond a reasonable doubt.

This does not require proof beyond all possible doubt, nor is the Commonwealth required to disprove every conceivable circumstance of innocence. However, suspicion or probability of guilt is not enough for a conviction.

A reasonable doubt is a doubt based on your sound judgement after a full and impartial consideration of all the evidence in the case.

There is no burden on the defendant to produce any evidence.

The trial court also provided Jury Instruction 2:

You are the judges of the facts, the credibility of the witnesses, and the weight of the evidence. You may consider the appearance and manner of the witnesses on the stand, their intelligence, their opportunity for knowing the truth and for having observed the things about which they testified, their interest in the outcome of the case, their bias, and, if any have been shown, their prior inconsistent statements, or whether they have knowingly testified untruthfully as to any material fact in the case.

You may not arbitrarily disregard believable testimony of a witness. However, after you have considered all the evidence in the case, then you may accept or discard all or part of the testimony of a witness as you think proper.

You are entitled to use your common sense in judging any testimony. From these things and all the other circumstances of the case, you may determine which witnesses are more believable and weigh their testimony accordingly.

Additionally, the court provided Jury Instruction 11, which specified that the Commonwealth was required to prove each element of aggravated sexual battery "beyond a reasonable doubt" and that the jury was required to acquit Webb if it failed to do so.

Webb proposed Jury Instruction A, which stated:

[I]t is not necessary that each element of the offense be proved by direct evidence, for an element may also be proved by circumstantial evidence. You may convict the defendant on circumstantial evidence alone, or on circumstantial evidence

- 4 -

combined with other evidence, if you believe from all the evidence that the defendant is guilty beyond a reasonable doubt.

When the Commonwealth relies upon circumstantial evidence, the circumstances proved must be consistent with guilt and inconsistent with innocence. It is not sufficient that the circumstances proved create a suspicion of guilt, however strong, or even a probability of guilt.

The evidence as a whole must exclude every reasonable theory of innocence.

Webb argued that the instruction was necessary because the Commonwealth relied partially on circumstantial evidence to prove its case.

The trial court found that although the Commonwealth relied partially on circumstantial evidence to corroborate K.B.'s testimony and discredit Webb's account, the Commonwealth's case "focus[ed]" on K.B.'s "direct testimony." Thus, the court found that the Commonwealth's case relied primarily on direct evidence to prove the elements of the charged offenses. Accordingly, the court rejected the proffered instruction.

After argument by counsel, the jury convicted Webb of aggravated sexual battery. On appeal, Webb challenges the trial court's rejection of Jury Instruction A, arguing that the proffered instruction was necessary because the Commonwealth partially relied on circumstantial evidence to prove the elements of aggravated sexual battery. He asserts that if circumstantial evidence "is presented at all in a case," the trial court must instruct the jury on "the proper use of circumstantial evidence in their deliberations." Webb further argues that the proposed instruction was essential to inform the jury of its authority to weigh and draw inferences from circumstantial evidence and to ensure that it did not impermissibly shift "the burden of proof" to Webb.

ANALYSIS

"A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019) (quoting *Darnell v. Commonwealth*, 6 Va. App. 485, 488 (1988)). At trial, the proponent must establish that a proposed instruction is a "correct statement of the law, applicable to the facts of the case on trial, and expressed in appropriate language." *Miller v. Commonwealth*, 64 Va. App. 527, 547 (2015) (quoting *Shaikh v. Johnson*, 276 Va. 537, 546 (2008)). "We review a trial court's decisions in giving and denying requested jury instructions for abuse of discretion." *Holmes v. Commonwealth*, 76 Va. App. 34, 53 (2022) (quoting *Conley v. Commonwealth*, 74 Va. App. 658, 675 (2022)). "Whether a proffered jury instruction accurately states the law, however, is reviewed *de novo*." *Id.* "[I]n deciding whether a particular instruction is appropriate, we view the facts in the light most favorable to the proponent of the instruction." *Id.* (quoting *Cooper v. Commonwealth*, 277 Va. 377, 381 (2009)).

It is well settled that "where granted instructions 'fully and fairly cover a principle of law, a trial court does not abuse its discretion in refusing another instruction relating to the same legal principle.'" *Taylor v. Commonwealth*, 77 Va. App. 149, 168-69 (2023) (quoting *Huguely v. Commonwealth*, 63 Va. App. 92, 129 (2014)). Moreover, "[i]f the instruction is not applicable to the facts and circumstances of the case, it should not be given." *Pena Pinedo v. Commonwealth*, 300 Va. 116, 122 (2021) (quoting *Commonwealth v. Sands*, 262 Va. 724, 729 (2001)). The trial court should also reject an instruction that "would be confusing or misleading to the jury." *Graves v. Commonwealth*, 65 Va. App. 702, 708 (2016) (quoting *Mouberry v. Commonwealth*, 39 Va. App. 576, 582 (2003)).

The Supreme Court of the United States has held that, generally, "where the Government's evidence is circumstantial," a jury instruction stating that circumstantial evidence "must . . . exclude every reasonable hypothesis other than that of guilt" is unnecessary, provided that other instructions adequately inform the jury of the burden of proof and reasonable doubt. *Holland v. United States*, 348 U.S. 121, 139 (1954). Moreover, in such a case, a circumstantial evidence instruction would be confusing or misleading because "[a]ttempts to explain the term 'reasonable doubt' do not usually result in making it any clearer to the minds of the jury." *Id.* at 140 (quoting *Miles v. United States*, 103 U.S. 304, 312 (1880)). *See also Strawderman v. Commonwealth*, 200 Va. 855, 858 (1959) (observing that "instructions attempting to define reasonable doubt should be discouraged" because they may confuse or mislead the jury).

In addition, we have held that a circumstantial evidence jury instruction was "not warranted" even when the Commonwealth relied partially on circumstantial evidence to prove its case because the Commonwealth relied primarily on direct, eyewitness evidence to prove the elements of the charged offenses. *Stewart v. Commonwealth*, 10 Va. App. 563, 570 (1990). Similarly, we have held that a trial court properly refused a cautionary instruction regarding circumstantial evidence where other instructions "fully and adequately" instructed the jury on "the burden of proof and reasonable doubt" and the jury's authority to weigh and consider all the evidence. *Johnson v. Commonwealth*, 2 Va. App. 598, 605 (1986); *see also Pease v. Commonwealth*, 39 Va. App. 342, 360 (2002) (en banc) (holding that "[t]he statement that circumstantial evidence must exclude every reasonable hypothesis of guilt is an alternative way of stating the fundamental precept that the Commonwealth has the burden to prove each element of an offense beyond a reasonable doubt").

Although the Commonwealth partially relied on circumstantial evidence to corroborate K.B.'s account and discredit Webb's alternative version of events,[2] the crux of the Commonwealth's case was K.B.'s testimony, which provided direct evidence of her sexual abuse.  Thus, the Commonwealth's case was not wholly or substantially circumstantial and the proffered jury instruction was not warranted.  *See Stewart*, 10 Va. App. at 570.

Moreover, the granted instructions "fully and fairly" covered the principles of law contained in the proposed instruction.  *Taylor*, 77 Va. App. at 168 (quoting *Huguely*, 63 Va. App. at 129).  Jury Instruction 11 defined the elements of aggravated sexual battery, and Jury Instruction 1 specified that Webb was "presumed to be innocent," the Commonwealth was required to prove each element "beyond a reasonable doubt," and Webb had no obligation "to produce any evidence."  Instruction 1 also defined "reasonable doubt" as "a doubt based on [the jury's] sound judgement after a full and impartial consideration of *all* the evidence" and explained that mere "suspicion or probability of guilt" was insufficient to convict.  (Emphasis added).  Jury Instruction 2 further informed the jurors that they were the "judges of the facts, the credibility of the witnesses, and the weight of the evidence" and that they could "accept or discard" witness testimony after considering "*all* the evidence . . . *and* . . . *circumstances* of the case."  (Emphases added).  Those instructions fully and adequately informed the jury of its authority to weigh and draw inferences from *all* the evidence—including circumstantial

---

[2] For example, a forensic nurse examined K.B. after the alleged abuse and determined that she had a "notch" on her hymen, which the expert opined typically did not occur in 13 year olds without "sexual activity."  In addition, K.B.'s unusual behavior after the incident, including the fact that she stopped interacting with Webb despite their previous friendship, suggested that Webb had sexually abused her.  Similarly, the Commonwealth introduced evidence that Webb's family members did not respond to Investigator Hendrix's repeated requests to discuss her investigation into K.B.'s sexual abuse, which tended to discredit their testimony and negate Webb's proffered hypothesis of innocence that K.B. spent the night in his bedroom without incident.

evidence—and instructed the jury on the burden of proof and reasonable doubt. *See Holland*, 348 U.S. at 140; *Johnson*, 2 Va. App. at 604-05.

## CONCLUSION

In sum, the trial court did not abuse its discretion by refusing Jury Instruction A because the Commonwealth did not rely exclusively or substantially on circumstantial evidence to prove the charged offense and the granted jury instructions fully and fairly covered the same principles of law as the proffered jury instruction. Accordingly, we affirm the trial court's judgment.

*Affirmed.*