STATE OF NORTH CAROLINA v. CLIFFORD H. EMERY

No. 8710SC449

(Filed 2 August 1988)

**1. Criminal Law § 91.12— speedy trial—delay for pretrial motions**

The defendant in a prosecution for second degree murder was not denied his right to a speedy trial under N.C.G.S. § 15A-701 by a delay of 474 days between indictment and trial where the time was within the 120-day limit after delays resulting from pending motions were excluded. Defendant did not dispute the State's evidence that the motions had been calendared on several occasions, presented no evidence showing that the delay in hearing the motions was caused solely by the State and failed to assert his right to a speedy trial at an earlier time or bring the pending motions to the court's attention.

**2. Criminal Law § 34.1— other offenses—improperly admitted—prejudicial**

The trial court erred in a prosecution for second degree murder by admitting evidence of other alleged crimes by defendant where, although evidence of defendant's sale of marijuana to the victim was relevant in showing a relationship between defendant and the victim and evidence that defendant sold marijuana and had once questioned a witness about whether the victim was a narc had some probative value concerning defendant's possible motive, evidence that defendant was in the business of selling marijuana to high school age persons, that defendant had traded marijuana for his car, the details of how marijuana was packaged and sold, and that defendant had loaded a gun during an unrelated breaking or entering was irrelevant and cumulatively prejudicial. N.C.G.S. § 8C-1, Rule 404(b).

Judge PHILLIPS concurs in the result.

APPEAL by defendant from *Bailey (James H. Pou), Judge.* Judgment entered 6 November 1986 in Superior Court, WAKE County. Heard in the Court of Appeals 17 November 1987.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General John F. Maddrey and Assistant Attorney General Michael Rivers Morgan, for the State.*

*Brenton D. Adams and K. Lee McEniry for defendant-appellant.*

GREENE, Judge.

This is a criminal action in which defendant was found guilty of second-degree murder and sentenced to fifty years in prison. Defendant assigns various errors which he argues entitle him to either dismissal of the charges or to a new trial.

The evidence at trial tended to show that the victim, Michael Young, age sixteen, and Robie Linton, age seventeen, went to defendant's house on 8 March 1985 around 5:00 p.m. Linton lived with defendant and defendant's girlfriend, Cheryl Lynn Hall. Linton, Young and defendant drank some beer and conversed while looking at a photograph album. After thirty to forty minutes, Linton went to a telephone near the den and called his girlfriend. From where he was talking on the phone, Linton could see defendant and Young in the den. Linton testified the victim was sitting in a chair and defendant was standing near the victim with a shotgun. Linton further testified defendant "was standing with the gun and he was talking about—covering it up or something, and he pulled it up like that, and when he pulled it up like that it went off and shot him in the chest . . . ." Linton testified the barrel was about four inches from the victim when the gun discharged. Linton also testified the first thing defendant said after the shooting was that it was an accident. In addition, Linton testified that both he and defendant were upset. The two then placed Young's body in a car, and drove to a wooded area and buried the body, after which defendant said a prayer over the grave.

There was also extensive testimony concerning defendant's trafficking in marijuana and concerning a breaking and entering in which defendant participated the night before the shooting. As well, Linton testified defendant asked Linton's opinion on whether the victim was a "nark" on one occasion. The State also presented evidence showing the hammer on the shotgun had to be fully cocked and that the trigger had to be fully pulled back in

order for the gun to fire. At the close of the State's evidence, defendant moved for a dismissal based upon the insufficiency of the evidence. The motion was denied and defendant rested without offering evidence. The jury was instructed on second-degree murder and involuntary manslaughter. After it finished deliberations, it returned a verdict of guilty as to second-degree murder.

The issues before us are: I) whether the trial court erred in denying defendant's motion to dismiss the action because defendant was not brought to trial within the time limits set out in the Speedy Trial Act; and II) whether defendant is entitled to a new trial because the trial court erred in admitting evidence of prior offenses allegedly committed by defendant.

I

[1] Defendant first argues his statutory right to a speedy trial was violated and therefore the trial court should have granted his motion to dismiss. The evidence before the trial judge indicated that defendant was arrested on 11 March 1985 and indicted on 24 June 1985. On 13 June 1985, 16 July 1985, and 28 October 1986, defendant filed various motions. The trial court did not hear these motions until 3 November 1986, some 474 days after defendant's indictment.

Section 15A-701(a1)(1) (1983) of the North Carolina General Statutes requires that the trial of a defendant begin "[w]ithin 120 days from the date the defendant is arrested, served with criminal process, waives an indictment, or is indicted, whichever occurs last . . . ." Therefore, the 120-day time period began running on 24 June 1985, the date of defendant's indictment.

However, certain time periods are excluded in computing the 120 days. Among the exclusions are any periods of delay resulting from

[h]earings on any pretrial motions or the granting or denial of such motions.

The period of delay under this subdivision must include all delay from the time a motion or other event occurs that begins the delay until the time a judge makes a final ruling on

the motion or the event causing the delay is finally resolved
. . . .

N.C.G.S. Sec. 15A-701(b)(1)(d).

Defendant's post-indictment motions on 16 July 1985 included motions for funds to hire an investigator, a ballistics expert, a fingerprint expert, a psychiatric social worker, a psychologist, a psychiatrist, and a parole and probation expert. On 28 October 1986, defendant filed the motion to dismiss for failure to bring him to trial in a timely manner along with several motions to exclude certain evidence. The trial court decided all these motions at a hearing on 3 November 1986 and denied defendant's motion to dismiss for failure to bring him to trial.

In *State v. Oliver*, 302 N.C. 28, 41, 274 S.E. 2d 183, 192 (1981), our Supreme Court stated:

> While motions should be promptly calendared for hearing, both sides are entitled to a reasonable time within which to prepare. . . . Provided the motion is heard within a reasonable time after it is filed and the state does not delay the hearing for the purpose of thwarting the speedy trial statute, the time between the filing of the motion and its disposition is properly excluded in computing the time within which a trial must begin.

The defendant has the burden of proof on a motion to dismiss for failure to comply with the provisions of the Speedy Trial Act. N.C.G.S. Sec. 15A-703(a). However, the State has the burden of "going forward with evidence in connection with excluding periods from computation of time in determining whether or not the time limitations . . . have been complied with." *Id.*

The State presented evidence through an assistant district attorney who testified that the motions had been calendared several times since defendant's indictment but had been "held open for various reasons." She also testified the State was delayed in complying with defendant's discovery requests because of delays in obtaining defendant's prior criminal records. In addition, she testified plea negotiations were ongoing, particularly regarding whether defendant would be tried as a "habitual felon" and whether he would be tried for first- or second-degree murder. There was also evidence the motions had been calendared two to

three weeks before the 3 November 1986 hearing but had been rescheduled because of conflicts with defendant's attorney. Defendant's attorney stated that he did not deny anything the assistant district attorney testified to, but argued the State delayed the trial in an attempt to try defendant as a habitual felon. However, defendant brought forward no evidence to support this assertion. Defendant's attorney also stated he made no request to have the motions heard at an earlier time.

·Under the evidence in the record, we hold the State satisfied its burden of coming forward with evidence and that defendant failed in his ultimate burden of showing the delay between indictment and trial was unreasonable or done for the purpose of thwarting the Speedy Trial Act. Defendant did not dispute the State's evidence that the motions had been calendared on several occasions and presented no evidence showing the delay in hearing the motions was caused solely by the State. Additionally, by failing to assert his right to a speedy trial at an earlier time or bring the pending motions to the court's attention, defendant indicated he was not seeking an expeditious adjudication but was content to await trial at a later date. *See State v. Horne*, 21 N.C. App. 197, 200, 203 S.E. 2d 636, 638 (1974); *see also State v. Johnson*, 275 N.C. 264, 269, 167 S.E. 2d 274, 278 (1969) (defendant who acquiesces in delay will not be allowed to convert right to speedy trial into a vehicle to escape justice). Therefore, when the 474-day period is reduced by the delay due to the pending motions, the total time from indictment to trial is well within the 120-day limit and defendant was not denied a speedy trial as provided by N.C.G.S. Sec. 15A-701. We note defendant does not argue his constitutional right to a speedy trial was violated and therefore we do not address that issue.

II

[2]  Defendant also argues the trial court erred in allowing into evidence testimony of other alleged crimes which were independent of, and distinct from, the crime for which he was being prosecuted. Specifically, defendant contends the trial court erred in admitting evidence that he trafficked in marijuana and was involved in a breaking and entering the night before the victim was shot.

After defendant's girlfriend, Cheryl Lynn Hall, testified over objection that she saw marijuana in defendant's home and that Linton and the victim had both purchased marijuana from defendant, the following exchange took place:

Q. [The prosecutor, Mr. Jackson] Mr. Emery in the business of selling marijuana.

MR. ADAMS: Objection.

THE COURT: Overruled.

A. Yes.

Q. (Mr. Jackson) An[d] was he in the business of selling it to high school age people.

MR. ADAMS: Objection.

THE COURT: Overruled.

A. He got it for Robie and Robie sold it to the high school kids.

On direct examination, Linton testified he sold marijuana for defendant and went into detail about how the drug was packaged and where Linton ultimately sold it. Linton also testified the victim occasionally bought marijuana from defendant. He further testified over objection that defendant had traded marijuana for a car on one occasion and that the victim had once received a citation for possession of marijuana.

In addition, Linton testified about breaking and entering a Disabled American Veterans' building on Hodge Road with a Jimmy Nutter the night before the shooting:

Q. [Mr. Jackson] Did you happen to see Clifford Emery on that night?

MR. ADAMS: Objection.

THE COURT: Overruled.

A. Yes, sir. He dropped me off and picked me up.

THE COURT: He was what?

A. He dropped me off and picked me up.

Q. (Mr. Jackson) Did you take anything from the place on Hodge Road?

A. Yes, sir.

MR. ADAMS: Objection.

THE COURT: Overruled.

A. We took—

Q. What did you take, Robie?

A. Beer.

Q. What kind of beer?

A. Schlitz and Miller. Those are the only 2 kinds I remember.

Q. How much beer in terms of cases did you take from there?

MR. ADAMS: Objection.

THE COURT: Overruled.

A. Probably about two.

Q. (Mr. Jackson) Okay.

THE COURT: About how much?

A. Two, sir.

Q. (Mr. Jackson) Speak up just a little bit, Robie. What did you do with the beer? In other words, how did you transport the beer?

MR. ADAMS: Objection.

THE COURT: Overruled.

A. We put it into the back of the car and took it to the house.

Q. What car is that?

A. The Sunbird or Cliff's car.

Q. Did Clifford Emery help you load the beer in the car?

MR. ADAMS: Objection.

THE COURT: Overruled.

State v. Emery

A. Yes, sir.

Q. (Mr. Jackson) Did he?

A. Yes, sir.

Q. About what time of the night was this, Robie?

    MR. ADAMS: Objection.

    THE COURT: Overruled.

A. From what I remember around midnight.

Q. (Mr. Jackson) Around midnight?

A. Eleven or midnight.

Q. Did you and Cliff drink any of the beer that night?

    MR. ADAMS: Objection.

    THE COURT: Overruled.

A. Yes, sir.

Q. (Mr. Jackson) Okay. Do you recall anything else that was taken from the American Legion Hut?

    MR. ADAMS: Objection.

    THE COURT: Overruled.

A. I think an American flag.

    THE COURT: Well, not what you imagine, what you know?

A. I don't really remember exactly.

. . . .

Q. On the night that you broke into the American Legion building on Hodge Road, did you have an occasion to see a shotgun?

    MR. ADAMS: Objection.

    THE COURT: Overruled.

A. Yes.

Q. And where did you see a shotgun?

MR. ADAMS: Objection.

A. A car slowed down, we could hear it, and Cliff pulled out the gun, and broke it down and then loaded it and closed—

DEFENDANT EMERY: That's a damn lie, man.

MR. ADAMS: Motion to strike as not being responsive.

THE COURT: Well—

A. But the car kept on going.

. . . .

Q. (Mr. Jackson) Okay. Robie, I'll ask you again, did you see—Where were you standing when you saw him put the shell in the gun?

A. He was standing on the other side of the car.

Q. Okay. And did he hold the gun up?

MR. ADAMS: Objection.

A. Yes, sir.

THE COURT: Overruled.

Defendant argues the evidence of these other alleged crimes should have been excluded since its only purpose was to demonstrate defendant's character. N.C.G.S. Sec. 8C-1, Rule 404(b) provides:

> *Other crimes, wrongs, or acts,*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

Rule 404(b) is consistent with North Carolina practice prior to its enactment. *State v. McKoy*, 317 N.C. 519, 525, 347 S.E. 2d 374, 378 (1986). However, evidence of other crimes, wrongs, or acts is not limited to the exceptions set out in Rule 404(b). *State v.*

*Weaver*, 318 N.C. 400, 402, 348 S.E. 2d 791, 793 (1986). Rather, evidence of other offenses is admissible so long as it is relevant to any issue other than the character of the accused. *Id.* Therefore, the "acid test" for admissibility under Rule 404(b) continues to be the relevancy of the evidence. *See State v. McLain*, 240 N.C. 171, 177, 81 S.E. 2d 364, 368 (1954). However, if the court does not clearly perceive the logical relevancy between the extraneous criminal transaction and the crime charged, the accused should be given the benefit of the doubt since evidence of other crimes is likely to have a prejudicial effect on the accused's right to a fair trial. *Id.* at 176-77, 81 S.E. 2d at 368.

Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. Sec. 8C-1, Rule 401. We agree with the State that the evidence concerning defendant's sale of marijuana to the victim was relevant in showing the relationship between the victim and defendant. We also agree that given the evidence defendant once questioned Linton about whether the victim was a "nark," the evidence that defendant sold marijuana was admissible since it had some probative value concerning defendant's possible motive in the shooting. However, the testimony that Emery was in the business of selling marijuana to high school age persons had no tendency to make any fact of consequence more or less probable. Nor was the evidence about how defendant procured his automobile and the evidence concerning the details of how the marijuana was packaged and sold relevant to any material fact in issue. Equally irrelevant was evidence concerning the victim's citation for possession of marijuana.

Even more troubling is the State's evidence concerning the breaking and entering incident. The State contends defendant's loading the gun during the breaking and entering indicated his willingness to use the gun in a felonious manner. However, this stated purpose violates the clear intent of Rule 404(b) since prior offenses are not admissible to prove that a person acted in conformity therewith. The State in no way linked this breaking and entering to the crime with which defendant was charged. Furthermore, the extensive questioning about details of the breaking and entering were irrelevant to any material fact in issue and demonstrated instead that defendant may have committed other unre-

lated crimes. *See State v. Simpson*, 297 N.C. 399, 255 S.E. 2d 147 (1979) (evidence that defendant committed sodomy with a dog was irrelevant to question of defendant's guilt of murder, burglary, and robbery); *State v. Platt*, 85 N.C. App. 220, 354 S.E. 2d 332 (1987) (evidence of cash containing traces of cocaine which were found in defendant's vehicle was irrelevant in defendant's trial for assault arising out of a shoot-out between a rival gang), *disc. rev. denied*, 320 N.C. 516, 358 S.E. 2d 529; *State v. Bailey*, 80 N.C. App. 705, 343 S.E. 2d 434 (1986) (cross-examination of defendant about nonconsensual sexual activity with woman other than victim irrelevant in prosecution of defendant for various sexual offenses and entitled defendant to new trial), *pet. for cert. improvidently allowed*, 318 N.C. 652, 350 S.E. 2d 94 (1986). While evidence that defendant was familiar with the gun and had used it previously might rebut defendant's claim of accident, the State greatly exceeded this purpose and questioned Linton at length about the details of the breaking and entering, details which had no connection with the crime for which defendant was being prosecuted.

Having determined some of the evidence was inadmissible, we must decide whether its admission was prejudicial such that a different result would have ensued had the evidence been excluded. *See State v. Logner*, 297 N.C. 539, 549, 256 S.E. 2d 166, 172 (1979). Resolution of this issue must be based on our reading of the record and on what seems to us to have been the probable impact of this irrelevant testimony on the minds of an average jury. *Id.* Viewing the record in its entirety, it is apparent the State spent a great deal of time focusing on the details of defendant's alleged prior offenses. We believe this evidence went beyond the scope necessary for the limited purposes for which it was offered and included details which could only relate to defendant's character and inflame the jury. *See State v. Whitney*, 26 N.C. App. 460, 463, 216 S.E. 2d 439, 441 (1975). Therefore, we hold the cumulative effect of the admission of the evidence was prejudicial error entitling defendant to a new trial.

We have carefully reviewed defendant's assignments of error concerning his motions for experts, the trial court's admission of certain other evidence, the trial court's allowing the prosecutor to refer to defendant by his nickname, and alleged errors in the jury instructions and hold the trial court's rulings did not constitute

prejudicial error. We do not address defendant's remaining assignments of error concerning certain remarks made by the trial judge and alleged errors in his sentencing because they are unlikely to recur at retrial. For the reasons above, this action is remanded for a

New trial.

Judge BECTON concurs.

Judge PHILLIPS concurs in the result.