STATE OF NORTH CAROLINA v. JASON JEREMIAH CHAPPELLE

No. COA07-1312

(Filed 21 October 2008)

**1. Evidence— prior crimes or bad acts—argument—motive— calling defendant a thief**

The trial court did not abuse its discretion in a first-degree arson case by admitting the victim's testimony regarding an argument she had with defendant on the day preceding the arson during which she refused to agree to allow defendant to store stolen goods in her home, or by admitting the victims' reference to defendant as a "thief," because: (1) the testimony was admissible under N.C.G.S. § 8C-1, Rule 404(b) since the nature of defendant's

argument with the victim, and her reaction to that argument, tended to show that he had a motive to set fire to her residence and was relevant to the State's theory of the case; (2) in one instance when the victim said she did not know that defendant was a thief in response to defendant's question as to their friendship, the victim was clarifying her reasons for refusing defendant entry to her home; and (3) on two other occasions defendant did not object to the victim's testimony that he was a thief, and in both instances the victim's testimony was admissible as corroborative of her earlier testimony regarding the argument and her reasons for telling defendant to leave.

## 2. Evidence— planned robbery—corroboration

The trial court did not err or commit plain error in a first-degree arson case by allowing the State to examine two witnesses regarding a planned robbery because: (1) the testimony was admissible as corroborative of the victim's testimony; (2) the State's question to defendant's brother as to whether defendant had discussed a planned robbery was proper in light of the victim's testimony; and (3) even assuming arguendo that the question was improper, defendant cannot show prejudice where the witness's answer was not harmful to defendant.

## 3. Arson— first-degree—identity of perpetrator—sufficiency of evidence

The trial court did not err in a first-degree arson case by concluding the State provided sufficient evidence to establish defendant's identity as the perpetrator of the arson because there was substantial circumstantial evidence from which a jury could reasonably find that defendant was the perpetrator of the arson, and although defendant's evidence contradicted the State's evidence, any such conflicts were for the jury to resolve.

## 4. Criminal Law— prosecutor's argument—criminal plan— knife and lighter found on defendant

The trial court did not err in a first-degree arson case by failing to intervene ex mero motu during certain portions of the State's closing argument because: (1) the victim testified to an argument in which she refused to allow defendant to include her in a criminal enterprise, and the State's argument merely alluded to that plan; and (2) the evidence showed that the fire was started with pieces of cardboard, and thus it was not improper for the State to argue that the knife and lighter found on defendant on

the morning of his detention were used to cut up cardboard and to start the fire.

5. **Criminal Law— prosecutor's argument—character propensity inference—remarks made in passing—general deterrence arguments—other crimes evidence—characterization of defendant as impulsive dangerous criminal**

The trial court did not err in a first-degree arson case by failing to intervene ex mero motu during certain portions of the State's closing argument that defendant characterizes as extremely inflammatory, allegedly called for a character propensity inference, and made it virtually certain that the jury relied on the other crimes evidence to return a guilty verdict because: (1) although the State needlessly digressed when it speculated that defendant was casing out a robbery victim when these remarks were gratuitous and served no useful purpose, there was evidence that defendant planned a robbery and that he disappeared at a time close to the fire; (2) even assuming arguendo that the remarks were improper, they were made in passing and were not a major focus of the State's closing argument, and thus defendant cannot demonstrate prejudice that would have resulted in a different result at trial; (3) in regard to defendant's general deterrence argument, he failed to cite any supporting authority and thus this argument is deemed abandoned under N.C. R. App. P. 28(b)(6); (4) the portions of the prosecutor's argument which defendant complains of were not general deterrence arguments, but specific deterrence arguments aimed at defendant himself; (5) the admission of the other crimes evidence was without error and the State's argument did not travel outside the record; (6) defendant's evidence did not tend to show his innocence, and the State presented substantial incriminating circumstantial evidence of defendant's guilt; and (7) it cannot be said that the prosecutor's characterization of defendant as an impulsive dangerous criminal lacked evidence when the State presented evidence that defendant set fire to an occupied trailer in the middle of the night out of anger and frustration that the occupant would not permit his entry.

6. **Constitutional Law— effective assistance of counsel—failure to preserve arguments**

Defendant did not receive ineffective assistance of counsel in a first-degree arson case based on his counsel's failure to preserve certain of his N.C.G.S. § 8C-1, Rule 404(b) arguments be-

cause: (1) defendant has not shown that the admission of a witness's testimony or that the State's purported use of the other crimes evidence, including its closing arguments, was error; and (2) without showing error, defendant cannot prevail on this claim.

**7. Constitutional Law— right to counsel—right to self-representation—knowing and voluntary waiver of counsel**

Defendant is not entitled to a new trial in a first-degree arson case even though he contends he was forced to make an unlawful choice concerning discharge of counsel and proceeding pro se and his waiver of counsel was allegedly unknowing because: (1) defendant requested to discharge his counsel after both sides rested on the second day of trial, he executed a waiver of counsel in which he relinquished his Sixth Amendment right to counsel, the court then appointed the public defender to remain as standby counsel and allowed defendant to reopen his case and to offer evidence, and defendant consulted with standby counsel throughout the remainder of trial; (2) defendant in the instant case chose between mutually exclusive constitutional rights, those rights being his right to counsel and his right to self-representation, and defendant's right to testify in his own defense was not implicated; (3) while defendant chose not to testify, he was afforded every opportunity to do so; (4) the trial court ex mero motu renewed defendant's motion to dismiss at the close of all evidence; (5) the record reflected that defendant thought he could stop the proceedings by moving to discharge counsel, and the trial court correctly determined that the trial decisions that resulted in impasse were mere trial tactics rather than critical matters requiring counsel to follow the client's wishes or be discharged from the matter; and (6) defendant's waiver of counsel was knowing and voluntary when the trial court made a full inquiry on the record, clearly articulated defendant's constitutional rights, and counseled defendant that it would be a terrible mistake to discharge his public defender, before allowing defendant to executive a written waiver of counsel.

**8. Sentencing— stipulation to sentencing worksheet—ineffective to establish out-of-state convictions were substantially similar to North Carolina offense**

Although defendant's stipulation to the State's sentencing worksheet was binding as to the existence of the prior convictions including the out-of state convictions, it was ineffective to establish that out-of-state convictions in the Commonwealth of

STATE v. CHAPPELLE

[193 N.C. App. 313 (2008)]

Virginia were substantially similar to a North Carolina offense as required by N.C.G.S. § 15A-140.14(e), and the trial court erred by failing to enter any findings in this regard. The State conceded that the prior driving while license revoked conviction was not within the statutory definition of a misdemeanor that may be counted for sentencing purposes, and on remand, that offense should be disregarded.

Appeal by defendant from judgment entered 12 January 2007 by Judge Thomas D. Haigwood in Pasquotank County Superior Court. Heard in the Court of Appeals 3 April 2008.

*Attorney General Roy Cooper, by Assistant Attorney General Elizabeth F. Parsons, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Daniel R. Pollitt, for defendant-appellant.*

STEELMAN, Judge.

Where the State presented substantial evidence of each element of arson, the trial court did not err in denying defendant's motions to dismiss. Testimony that the victim of the arson refused to agree to allow defendant to store stolen goods in her home was relevant to show defendant's motive to burn the premises. The trial court did not err in allowing defendant to dismiss counsel over tactical differences and represent himself after a thorough colloquy demonstrating that his waiver of his right to counsel was knowing and voluntary. The prosecutor's closing argument approached, but did not exceed, the bounds of propriety. Where defendant has not shown error, he cannot prevail on a claim of ineffective assistance of counsel. Defendant's stipulation as to his prior convictions is effective to establish the convictions but ineffective to establish that his out-of-state convictions are substantially similar to a North Carolina offense.

## I. Factual and Procedural Background

Jason Jeremiah Chappelle ("defendant") was found guilty of one count of first-degree arson at the 7 January 2007 Criminal Session of Pasquotank County Superior Court. The State's evidence at trial tended to show that defendant was acquainted with Colleen Durant ("Durant"), the occupant of a mobile home that was singed by a late-night fire on 20 July 2006. Durant and her overnight guest, Leanne Martin ("Martin"), each testified to the events of that evening. De-

fendant repeatedly knocked on the doors and a window of Durant's home and attempted to persuade the two women to let him in. The women told him to go away but did not call police. Eventually they turned off the lights and went to bed. Defendant again called out to the women, then all became quiet. No one else came to Durant's home that evening. Shortly after the women retired to bed, Martin smelled smoke. When Durant opened the door, she saw smoke coming from beneath the mobile home. Durant and Martin called police and the fire department.

Deputy Sheriff Forbes responded to the call. He found the two women in the street and saw flames coming from the back of the mobile home. Ms. Durant told him that "she knew who did it" and, giving defendant's name, told police that defendant was wearing blue shorts and riding a red bicycle. Firefighter Nelson extinguished the fire and noticed pieces of cardboard in the area of the fire. Two arson experts ruled out accidental causes and concluded that an incendiary fire was started by an open flame. These experts testified to burned debris, including insulation, vinyl skirting, and cardboard. Durant testified that the trailer's vinyl skirting, previously intact, had been partially removed. Although there had been a pile of cardboard boxes sitting near the front door of the mobile home before defendant's evening visit, only one box remained.

Deputy Gregory and Deputy Wooten testified that they found defendant on the edge of a road in the trailer park within view of Durant's home. He was wearing a blue t-shirt and blue shorts. He was astride a red bicycle. Deputy Wooten took him into custody. A search produced a cigarette lighter from defendant's pocket and a six-inch knife from his waistband.

At the close of the State's evidence, defendant's motion to dismiss was denied. Defendant, through counsel, advised the court he would not be presenting any evidence, and court was adjourned for the day. The next morning, defendant dismissed his attorney, and the court permitted him to present evidence. Defendant's motion to dismiss at the close of all the evidence was denied.

At sentencing, the trial court found defendant to be a prior record Level IV for felony sentencing purposes based upon prior convictions in the State of North Carolina and the Commonwealth of Virginia. Defendant received an active sentence of 117 to 150 months.

Defendant appeals.

STATE v. CHAPPELLE

[193 N.C. App. 313 (2008)]

## II. Analysis

### A. Evidentiary Issues

In his first two arguments, defendant contends that he is entitled to a new trial because the trial court erroneously allowed Durant to testify to other crimes, then allowed the State to impermissibly question other witnesses regarding that testimony. We disagree.

Defendant asserts that the evidentiary exception allowing motive evidence is closely circumscribed, and evidence detailing the cause of an argument that distinctly references other crimes, as contrasted with evidence that a dispute simply existed, is inadmissible to show motive. We first review defendant's arguments regarding Durant's testimony.

### 1. Durant's Testimony

**[1]** At trial, the State sought to introduce evidence of an argument between defendant and the victim as proof of malice and defendant's motive to commit arson. At the conclusion of the *voir dire* hearing, defendant contended first that the substance of the argument was irrelevant and, second, that under Rule 403 of the North Carolina Rules of Evidence, the probative value of the evidence was outweighed by the likelihood of undue prejudice. The trial court first ruled that the proffered testimony was relevant for the limited purpose of proving motive. The trial court then ruled that the probative value of the evidence outweighed any prejudicial value, stating that "enough of it [would be allowed] to support [the State's] theory." Defendant did not make a continuing objection or request a limiting instruction.

The jury returned to the courtroom, and Durant was permitted to testify to an argument with defendant that occurred on the day preceding the arson, as follows:

Q. [D]id [the defendant] say anything that concerned you . . . earlier in the day when he talked to you and you decided not to let him in any more[?]

A. I didn't want to let him in any more.

Q. And why was that?

A. Because he wanted to rob a place on Main Street Extended and take money, diamonds, and guns, and he said the drug dealers would be interested in them and he wanted to store stuff at

my house and I said, no. And I refused to let him in my house because he wanted to rob this place, store the stuff at my place, and bring these bad people, you know, to my place.

. . .

Q. [D]id he make a telephone call from your house?

A. Yes, he did. . . . He made a telephone call from my house to somebody and was talking to them about robbing the place.

Q. And what did he want that person to do . . . ?

A. To help him rob the place.

On cross-examination, Durant referenced this testimony upon three occasions. First, she acknowledged that she had considered defendant a friend, then stated "But . . . I didn't realize and I didn't know that he was a thief either, you know." Defendant's objection was overruled. Second, Durant stated, without objection, that the day of the arson was "the day he talked about robbing the place." Finally, Durant twice referred to the defendant as "thief," whereupon the trial court admonished her to "just answer the question."

Defendant contends that this testimony went beyond the scope necessary to show that defendant and the victim had an argument and instead provided irrelevant and inflammatory "other crimes" evidence that tended only to prove that defendant was a "robber" or "thief" and was not admissible under Rule 404(b) of the North Carolina Rules of Evidence. He further asserts that, even if the testimony was admissible, any probative value was substantially outweighed by the dangers of unfair prejudice and misleading the jury and the testimony should have been excluded under Rule 403.

### a. Rule 404(b)

Rule 404(b) is a rule of inclusion rather than a rule of exclusion. *See, e.g., State v. Agee*, 326 N.C. 542, 549-50, 391 S.E.2d 171, 176 (1990). The rule permits evidence of defendant's prior bad acts when introduced for a proper purpose. N.C. Gen. Stat. § 8C-1, Rule 404(b) (2007) ("Evidence of other crimes, wrongs, or acts . . . may, however, be admissible for other purposes, such as proof of motive . . . ."). The "acid test" under Rule 404 is still relevancy. *State v. Emery*, 91 N.C. App. 24, 33, 370 S.E.2d 456, 461 (1988) (citing *State v. McClain*, 240 N.C. 171, 177, 81 S.E.2d 364, 368 (1954)).

A defendant's motive to commit a crime is clearly of consequence to his guilt or innocence. In the instant case, the nature of defendant's

argument with Colleen Durant, and her reaction to that argument, tended to show that he had a motive to set fire to her residence and was relevant to the State's theory of the case. We hold that Rule 404(b) did not require its exclusion as evidence probative only of defendant's propensity to commit crimes.

### b. Rule 403

The trial court enjoys broad discretion to admit or exclude evidence under Rule 403, and will be reversed "only upon a showing that its ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision." *State v. Anderson*, 350 N.C. 152, 175, 513 S.E.2d 296, 310 (1999) (internal quotation marks and citations omitted); *see also State v. Chapman*, 359 N.C. 328, 348-49, 611 S.E.2d 794, 811 (2005) (discussing Rules 402 and 403 of the North Carolina Rules of Evidence and the meaning of unfair prejudice).

In the instant case, the trial court considered the nature of the evidence, the possibility of prejudice to the defense, and arguments from both parties before rendering a decision. Upon a thorough review of the record, we cannot say that the trial court's decision was either arbitrary or unsupported by reason. *Anderson* at 175, 513 S.E.2d at 310. We hold that the trial court did not abuse its discretion in admitting Colleen Durant's testimony regarding the subject of the argument between Durant and defendant during the day preceding the arson.

### c. Testimony of Durant During Cross-Examination

During defendant's cross-examination of Durant, she referred to defendant as a "thief" and to the day preceding the arson as "the day that he talked about robbing the place." Defendant objected to one statement but not the others. Where defendant preserved the issue by objection, the court's ruling is reviewed for an abuse of discretion. *Chapman*, 359 N.C. at 348-49, 611 S.E.2d at 811. Where defendant failed to preserve the issue for appellate review, this Court reviews the record for plain error. *Id.* at 349, 611 S.E.2d at 812.

We first consider the testimony to which defendant objected. In responding to defendant's question as to their "friendship," Durant stated "I didn't know that he was a thief[.]" Her response clarified her reasons for refusing defendant entry to her home. We hold that the trial court did not abuse its discretion when it overruled defendant's objection to this testimony. *Chapman*, 359 N.C. at 348-49, 611 S.E.2d at 811.

On two other occasions, defendant did not object to Durant's testimony but now complains that Durant's assertion that he was a "robber" or "thief" was plain error. A review of the record shows that Durant was sometimes emotional, her testimony was sometimes rambling, and the trial court occasionally admonished her to "just answer the question." The jury had the opportunity to hear the witness and observe her demeanor throughout her testimony.

In the first instance, defendant sought to establish from Durant the events of the day of the arson, and Durant stated "That was the day that he talked about robbing the place." In the second instance, defendant questioned Durant as to her interview with the fire inspector:

Q. Do you recall telling him that you could tell that it was Mr. Chappelle because he spoke to you in a very low voice. Colleen, let me in. Let me in.

A. He didn't speak in a low voice. He said, Colleen, let me in.

Q. So if the inspector wrote down that you told him that he was—that you told him that Jason had talked to you in a low voice, Colleen let me in, let me in, that would be incorrect?

A. If that's what I said then that's what happened. But I heard him say, Colleen, let me in, let me in. I did hear him say, Colleen, let me in.

Q. In a low voice, is that right?

A. I don't remember what kind of voice it was. But I did hear him say to let me in. And I wouldn't let him in. He is a thief. He's a thief.

THE COURT: Ma'am, just answer the question.

Defendant did not object or move to strike Durant's response to his question, which, although emotional, was nonetheless admissible as corroborative of her earlier testimony regarding the argument she had with defendant that day. *State v. Riddle,* 316 N.C. 152, 156-57, 340 S.E.2d 75, 77-78 (1986) ("Corroboration is 'the process of persuading the trier of the facts that a witness is credible.' ") (quoting 1 Brandis on North Carolina Evidence § 49 (2d rev. ed. 1982)).

In both instances, Durant's testimony was admissible as corroborative of her earlier testimony regarding the argument and her

reasons for telling defendant to leave. *Riddle* at 156-157, 340 S.E.2d at 77-78. We hold that this was not error, much less plain error.

## 2. Other Witness Testimony

[2] Defendant argues that the State's examination of two other witnesses regarding the planned robbery was prejudicial to his defense. Because defendant failed to object at trial, we review for plain error. *Chapman,* 359 N.C. at 349, 611 S.E.2d at 812.

The State examined Martin, Durant's overnight guest, as to any conversation between Durant and defendant that she may have overheard. Martin responded that defendant wanted to store stolen property from a planned robbery and was unhappy when Durant told him to leave. We hold that this testimony was admissible as corroborative of Durant's testimony. *Riddle* at 156-57, 340 S.E.2d at 77-78. As discussed above, the subject of the argument was also admissible to show motive.

The State then asked defendant's brother, with whom he had previously resided, whether defendant had discussed any robbery plans with him. The brother responded that he had not. We hold that the State's question was proper in light of Durant's testimony. Even assuming *arguendo* that the question was improper, defendant cannot show prejudice where the witness' answer was not harmful to defendant.

We hold that, as to the testimony of these two witnesses, there was no error, much less plain error.

Defendant's evidentiary arguments are each without merit.

## B. Motion to Dismiss

[3] In his third argument, defendant contends that the State's evidence was insufficient to establish his identity as the perpetrator of the arson. We disagree.

Upon a motion to dismiss in a criminal trial, the Court must determine " 'whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.' " *State v. Barnes,* 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993) (quoting *State v. Powell,* 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980)). The court must consider all "the evidence in the light most favorable to the State, giving the State the benefit of all

reasonable inferences." *Id.* (citation omitted). " 'Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of· innocence.' " *Id.*, 430 S.E.2d at 919 (quoting *State v. Stone*, 323 N.C. 447, 452, 373 S.E.2d 430, 433 (1988)). The test of sufficiency "is the same whether the evidence is direct, circumstantial, or both." *Id.* (citing *State v. Bullard*, 312 N.C. 129, 322 S.E.2d 370 (1984)).

A review of the record shows that the evidence, when viewed in the light most favorable to the State, raised more than a suspicion or conjecture as to the defendant's identity as the perpetrator of the arson. Defendant had an argument with Durant earlier that day, and repeatedly knocked on the doors and windows of Durant's trailer, in a desperate attempt to gain access to the residence. Durant refused to let him in, and shortly thereafter, the fire started. Defendant was the only person in the vicinity of Durant's trailer that evening. As to the arson of Durant's home, there was circumstantial evidence that: (1) there were intact cardboard boxes outside Durant's residence when defendant arrived; (2) the fire was started with pieces of cardboard; (3) only one box remained when the investigators arrived; and (4) defendant was found in the area with a lighter and a six-inch knife which had foreign matter on the blade. Billy Hooten, a witness for the defendant, testified that defendant and his bicycle had disappeared shortly before the fire started. We hold that there was substantial circumstantial evidence from which a jury could reasonably find that defendant was the perpetrator of the arson. *Barnes*, 334 N.C. at 75, 430 S.E.2d at 918-19. Although defendant's evidence contradicted the State's evidence, any such conflicts were for the jury, not the trial judge, to resolve.

This argument is without merit.

### C. The State's Closing Argument

In his fourth argument, defendant contends that the State's closing argument was improper and independent error because it urged the jury to improperly consider "other crimes" evidence as character evidence, included an improper "general deterrence" argument, and improperly suggested that acquittal might subject jurors to a risk of robbery by defendant. He further asserts that the State's characterization of him as an "impulsive dangerous criminal" was abusive name-calling. We disagree.

We note at the outset that defendant's brief fails to cite the appropriate standard of review for closing arguments and intertwines its

evidentiary arguments with those attacking the State's conduct during closing argument.

" 'Counsel are entitled to argue to the jury all the law and facts in evidence and all reasonable inferences that may be drawn therefrom, but may not place before the jury incompetent and prejudicial matters and may not travel outside the record by interjecting facts . . . not included in the evidence.' " *State v. Fletcher*, 354 N.C. 455, 486, 555 S.E.2d 534, 553 (2001) (alteration in original) (quoting *State v. Syriani*, 333 N.C. 350, 398, 428 S.E.2d 118, 144, *cert. denied*, 510 U.S. 948, 126 L. Ed. 2d 341 (1993)). The standard of review for alleged errors in closing arguments "depends on whether there was a timely objection made or overruled, or whether no objection was made and defendant contends that the trial court should have intervened *ex mero motu.*" *State v. Walters*, 357 N.C. 68, 101, 588 S.E.2d 344, 364 (2003) (citation omitted). Where an objection was overruled, the trial court's ruling is reviewed for an abuse of discretion only where improper remarks were of a magnitude that their inclusion prejudiced defendant. *Compare Walters* at 105-06, 588 S.E.2d at 366 (concluding that the necessary showing of prejudice was not met even though the prosecutor's argument improperly compared defendant to Hitler in the context of being evil) *with State v. Jones*, 355 N.C. 117, 133-34, 558 S.E.2d 97, 107-08 (2002) (concluding that the trial court abused its discretion in allowing the prosecution's references to Columbine and Oklahoma City because their inclusion was both improper and prejudicial). Where no objection was made, this Court reviews the remarks for gross impropriety. *Walters* at 101, 588 S.E.2d at 364 (citing *State v. Barden*, 356 N.C. 316, 358, 572 S.E.2d 108, 135 (2002)).

Statements made in closing arguments are not to be considered in isolation or out of context, but must be reviewed in the context in which they were made and the overall factual circumstances to which they referred. *State v. Cummings*, 353 N.C. 281, 297, 543 S.E.2d 849, 859 (2001) (quoting *State v. Guevara*, 349 N.C. 243, 257, 506 S.E.2d 711, 721 (1998), *cert. denied*, 526 U.S. 1133, 143 L. Ed. 2d 1013 (1999) and *State v. Green*, 336 N.C. 142, 188, 443 S.E.2d 14, 41, *cert. denied*, 513 U.S. 1046, 130 L. Ed. 2d 547 (1994)).

### 1. Asserted Errors Where There Was No Objection

**[4]** Defendant argues that the trial court erred in failing to intervene during the following portions of the State's closing argument:

[Defendant] . . . needed a place to hide out. And the one person who he thought he could rely on to let him hide out had turned him out of their [sic] house. . . . she said he used to hang at my house, he was there. . . . I let him hang at my house up until that afternoon when he got on the telephone at my house and made a phone call asking some—talking about wanting to rob a house on West Main Street Extended and store the stuff at my house.

. . .

Once a fire is set, you can't control what it does. So that's why the law defines burning in the way that it defines it. . . . The fact is that this Defendant did not care about the consequences of his actions in his desperate attempt to find a place to stay and to store stolen property on the morning of July 20th when he took his knife, cut up the cardboard, walked to that end of the trailer, placed that cardboard up against that plastic pipe, took that lighter and set that cardboard on fire.

These arguments are reviewed for gross impropriety. *Walters*, 357 N.C. at 101, 588 S.E.2d at 364.

The State may argue the evidence and logical inferences that arise from the evidence. *Fletcher*, 354 N.C. at 486, 555 S.E.2d at 553. Colleen Durant testified to an argument in which she refused to allow defendant to include her in a criminal enterprise, and the State's argument merely alluded to that plan. Moreover, the evidence showed that the fire was started with pieces of cardboard. Thus, in the latter portion, it was not improper for the State to argue that the knife and lighter found on defendant on the morning of his detention were used to cut up cardboard and to start the fire. *Id.* We hold that the court did not err by not intervening *ex mero motu* with respect to these arguments.

### 2. Overruled Objections: *Fletcher, Tucker,* and *Brooks*

[5] Defendant further contends that portions of the prosecutor's argument were "extremely inflammatory," called for a character propensity inference, and made it "virtually certain" that the jury relied on the other crimes evidence to return a guilty verdict. As noted *supra*, before considering whether defendant was prejudiced or whether the trial court abused its discretion, we must first determine whether the prosecutor's remarks were improper. *Jones*, 355 N.C. at 131, 558 S.E.2d at 106. Upon a determination of impropriety in

**STATE v. CHAPPELLE**

[193 N.C. App. 313 (2008)]

the prosecutor's argument, we then proceed to consider whether those remarks were prejudicial. *Id.*

In arguing that defendant had the opportunity to commit the crime, the prosecutor pointed out that defendant had no alibi at the time the fire was set and that defendant's own alibi witness, Billy Hooten, was unable to account for defendant's whereabouts at the time of the fire. She went on to say:

> Here he was at Hooten's house between 10:00 and 10:30 and where had he been by the way interestingly enough [sic] on some long bike ride around in the Forrest Park area. Where is that in relation to West Main Street Extended? Was he casing out his robbery victim—[OBJECTION. OVERRULED.]—on this long bike ride? So he had been on this long bike ride and now he's back at Mr. Hooten's house between 10:00 and 10:30 . . . when [Hooten] went in[to his house to fix defendant something to eat.] [Hooten] . . . comes out with the food some time a little before 11:00, . . . , and . . . Defendant has left and the bicycle is gone and he doesn't see him anymore.

The State also argued to the jury:

> . . . I ask you now to do your duty and follow the law and find this Defendant guilty of first degree arson.
>
> And in doing so, you achieve two [2] things. You achieve justice for Colleen Durant and she is no less deserving of that because of the way she chooses to live her life because justice is blind to a person's station in life and treats everybody equally.
>
> And the second thing is, you ensure this Defendant, I contend to you, this impulsive, dangerous criminal won't be on the streets of Pasquotank County to take advantage of somebody else like Colleen Durant or to rob anybody's house over on West Main Street Extended or anyone else for that matter. [OBJECTION. OVERRULED.] Or to set another person's house on fire in another moment of desperation that he may face in the future when he owes people money and the drug dealers are after him and he has no where [sic] to live . . . .

Relying on *State v. Tucker*, 317 N.C. 532, 346 S.E.2d 417 (1986) and *State v. Brooks*, 113 N.C. App. 451, 439 S.E.2d 234 (1994), defendant argues that the trial court erred in overruling his objections to these arguments in that: (1) the State's arguments improperly urged the jury

to use other crimes evidence for a forbidden purpose; (2) the State's characterization of defendant as an "impulsive dangerous criminal" was abusive name-calling; (3) the State's assertion that defendant might rob others improperly suggested that defendant would rob the jurors; and (4) the State's argument that defendant should be convicted so that he "won't be on the streets of Pasquotank County" was an improper general deterrence argument.

We first consider defendant's argument that the State's arguments improperly urged the jury to use other crimes evidence for a forbidden purpose. We agree that the State needlessly digressed when it speculated that defendant was casing out a robbery victim. These remarks were gratuitous and served no useful purpose. However, there was evidence that defendant planned a robbery and that he disappeared at a time close to the fire. While the argument was disingenuous, we hold that it was not improper. Even assuming *arguendo* that the remarks were improper, they were made in passing and were not a major focus of the State's closing argument. Thus defendant cannot demonstrate prejudice that would have resulted in a different result at trial. N.C. Gen. Stat. § 15A-1443(a) (2007); *see also State v. Campbell*, 133 N.C. App. 531, 539, 515 S.E.2d 732, 737 (1999).

As to defendant's general deterrence argument, he cites no supporting authority. "It is not the role of the appellate courts . . . to create an appeal for an appellant." *Richardson v. Maxim Healthcare/Allegis Grp.*, 188 N.C. App. 337, 345, 657 S.E.2d 34, 39 (2008) (alteration in original) (citation and internal quotations omitted). Pursuant to N.C. R. App. P. 28(b)(6), we deem this argument abandoned. Further, we find this argument to be without merit. The portions of the prosecutor's argument which defendant complains of were not general deterrence arguments, but specific deterrence arguments, aimed at the defendant himself. Such arguments are not improper. *State v. Abraham*, 338 N.C. 315, 339, 451 S.E.2d 131, 143 (1994); *Syriani*, 333 N.C. at 397, 428 S.E.2d at 144.

We now turn to defendant's remaining arguments. In *Brooks*, a panel of this Court awarded the defendant a new trial because the trial court improperly admitted irrelevant evidence of defendant's past physical violence towards his wife and allowed the State to argue that conduct to the jury. 113 N.C. App. at 458, 439 S.E.2d at 239. This Court held that these errors were prejudicial and deprived the defendant of a fair trial. *Id.* at 459. We hold that *Brooks* is inapposite. In the instant case, the admission of the other crimes evidence was

STATE v. CHAPPELLE

[193 N.C. App. 313 (2008)]

without error and the State's argument did not "travel outside the record." *Fletcher*, 354 N.C. at 486, 555 S.E.2d at 553; *see also State v. Wortham*, 287 N.C. 541, 546, 215 S.E.2d 131, 132 (1975) (affirming the Court of Appeals determination that there was no reversible error while noting that the "District Attorney was perilously near crossing the line from allowable denunciation into the forbidden territory of abuse which would have required reversal.").

In *Tucker*, evidence of past convictions was admitted solely to impeach defendant's credibility. 317 N.C. at 543, 346 S.E.2d at 423. The Supreme Court held that the prosecutor's use of this evidence in closing arguments was improper and prejudicial, and that it was reversible error for the trial court to permit the prosecutor to argue the convictions as substantive evidence of defendant's guilt. However, in determining prejudice, the *Tucker* Court noted that defendant's evidence tended to show his innocence:

> The conflict [between the State's evidence and defendant's evidence] should have been determined by the jury free from the state's argument which gave force to the evidence of defendant's prior convictions beyond that permitted by the law. In light of the sharp evidentiary conflict, we conclude there "is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at" trial.

*Id.* at 544-45, 346 S.E.2d at 424 (quoting N.C.G.S. § 15A-1443 (1983)); *cf. Walters* at 105, 588 S.E.2d at 364 (noting that, where there is overwhelming evidence of defendant's guilt, defendant must show not only that the prosecutor's remarks were improper, but that they "were of such magnitude that their inclusion prejudiced defendant."). This case is more like *Walters*, in that defendant's evidence did not tend to show his·innocence, and the State presented substantial incriminating circumstantial evidence of defendant's guilt. We hold that *Tucker* is inapposite.

In the instant case, the prosecutor characterized defendant as an impulsive dangerous criminal. The State is afforded wide latitude in its jury arguments. *Syriani*, 333 N.C. at 398, 428 S.E.2d at 144. However, "[t]he district attorney should refrain from characterizations of defendant which are calculated to prejudice him in the eyes of the jury when there is no evidence from which such characterization may legitimately be inferred." *State v. Britt*, 288 N.C. 699, 712, 220 S.E.2d 283, 291 (1975). Here, the State presented evidence that defendant set fire to an occupied trailer in the middle of the night out

of anger and frustration that the occupant would not permit him entry. It is a reasonable inference that such an individual is impulsive, and that such desperate measures are dangerous. While the prosecutor's comments approached the limits of the wide latitude permitted for argument, we cannot say that the argument lacked evidence "from which such characterization may legitimately be inferred."

This argument is without merit.

### D. Ineffective Assistance of Counsel

[6] In his fifth argument, defendant contends that counsel's failure to preserve certain of his Rule 404(b) arguments at trial constituted ineffective assistance of counsel. The burden of proving ineffective assistance of counsel requires defendant to satisfy a two-part test:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

State v. Roache, 358 N.C. 243, 279, 595 S.E.2d 381, 405 (2004) (quoting Strickland v. Washington, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984)). In the instant case, defendant has not shown that the admission of Martin's testimony or that the State's purported use of the other crimes evidence, including its closing arguments, was error. Without showing error, defendant cannot prevail on a claim that he received ineffective assistance of counsel. Id.

This argument is without merit.

### E. Waiver of Counsel

[7] In his sixth argument, defendant contends that he is entitled to a new trial because he was forced to make an unlawful choice concerning discharge of counsel and his waiver of counsel was unknowing. We disagree.

Defendant contends that, under State v. Ali, 329 N.C. 394, 407 S.E.2d 183 (1991), the trial court forced him to make an unlawful choice between legal representation by counsel who refused to fol-

low his wishes as to critical trial matters and proceeding *pro se*. He argues that, under *State v. Colson*, 186 N.C. App. 281, 650 S.E.2d 656 (2007), this error rendered his waiver unknowing and involuntary. This argument is unavailing.

Both the State and the defense rested at the close of the afternoon session on the second day of trial. The next morning, court was reconvened outside the presence of the jury to consider defendant's letter requesting to discharge his counsel and to offer evidence. These proceedings lasted well over an hour and involved dialogue among the court, defendant, and counsel. Upon detailed inquiry, the trial court concluded that the differences between defendant and his counsel were stylistic and tactical. Citing defendant's absolute constitutional right to self-representation, the court heard defendant's motion to discharge counsel. Defendant then executed a waiver of counsel in which he relinquished his Sixth Amendment right to counsel. The court then appointed the public defender to remain as standby counsel and allowed defendant to re-open his case and to offer evidence. Defendant called witnesses on his own behalf but did not testify himself and gave no indication that he wished to do so. The record reflects that defendant consulted with standby counsel throughout the remainder of trial.

### 1. *Colson* and Defendant's Constitutional Rights

In *Colson*, this Court granted a new trial to a defendant who was forced to choose between his constitutional right to counsel and his constitutional right to testify in his own defense. 186 N.C. App. at 284-85, 650 S.E.2d at 658 (referring to defendant's dilemma as a "Hobson's choice, . . . involving the relinquishment of one constitutional right in order to assert another") (citing *State v. Luker*, 65 N.C. App. 644, 652, 310 S.E.2d 63, 67 (1983), *rev'd on other grounds*, 311 N.C. 301, 316 S.E.2d 309 (1984) and *Simmons v. United States*, 390 U.S. 377, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968)). The facts in the instant matter are distinguishable from *Colson*. The defendant in *Colson* was forced to choose between his right to counsel and the right to testify in his own defense. Defendant in the instant case chose between mutually exclusive constitutional rights: his right to counsel and his right to self-representation. Defendant's right to testify in his own defense was not implicated. While defendant chose not to testify, he was afforded every opportunity to do so. The trial court allowed defendant to re-open his case and present evidence, provided defendant with the assistance of standby counsel, and *ex mero motu*

renewed defendant's motion to dismiss at the close of all the evidence. Defendant's reliance on *Colson* is misplaced.

### 2. Defendant's Waiver of His Right to Counsel

We now turn to defendant's claim that his waiver was unknowing and not voluntary..

> Like the decision regarding how to plead, the decision whether to testify is a substantial right belonging to the defendant. *While strategic decisions regarding witnesses to call, whether and how to conduct cross-examinations, . . . and what trial motions to make are ultimately the province of the lawyer,* certain other decisions represent more than mere trial tactics and are for the defendant. These decisions include what plea to enter, whether to waive a jury trial and whether to testify in one's own defense.

*Luker,* 65 N.C. App. at 649, 310 S.E.2d at 66 (emphasis added) (citing ABA Standards For Criminal Justice, the Defense Function, § 4-5.2 (1982 Supp.); *Wainwright v. Sykes,* 433 U.S. 72, 91, 97 S. Ct. 2497, 2509, 53 L. Ed. 2d 594, 611 (1977), (Burger, C.J., concurring)), *rev'd on other grounds,* 311 N.C. 301, 316 S.E.2d 309 (1984). The record clearly reflects that defendant thought that he could stop the proceedings by moving to discharge counsel. The trial court correctly determined that the trial decisions that resulted in impasse were "mere trial tactics" rather than "critical matters" requiring counsel to follow the client's wishes or be discharged from the matter. Our review shows that the trial court made a full inquiry on the record, clearly articulated defendant's constitutional rights, and counseled defendant that it would be "a terrible mistake" to discharge his public defender, before allowing defendant to execute a written waiver of counsel. On this record, we hold that defendant's waiver of counsel was knowing and voluntary.

We also hold that defendant's contention that he effectively moved for mistrial is unsupported by the record.

This argument is without merit.

### F.  Prior Convictions at Sentencing

[8] In his final two arguments, defendant contends that the State's evidence was insufficient to prove prior convictions and substantial similarity of offenses in the Commonwealth of Virginia. We agree in part and disagree in part.

STATE v. CHAPPELLE

[193 N.C. App. 313 (2008)]

Defendant stipulated in writing to the information set forth in the sentencing worksheet prepared by the State. During the sentencing hearing, he orally affirmed this stipulation to the trial court. The trial judge found that the defendant had twelve prior record points and sentenced him at a prior felony record level IV. However, the court did not make a finding that the Virginia offenses were substantially similar to the North Carolina offenses as classified by the State in the worksheet.

Prior panels of this Court have determined that a stipulation regarding out-of-state convictions is insufficient, absent a determination of substantial similarity by the trial court, to support the trial court's prior record determination. *State v. Palmateer*, 179 N.C. App. 579, 581-82, 634 S.E.2d 592, 593-94 (2006); *see also State v. Hanton*, 175 N.C. App. 250, 253-55, 623 S.E.2d 600, 602-04 (2006). We are bound by our prior holdings on this issue. *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 36-37 (1989).

While the stipulation by defendant is binding as to the existence of the prior convictions (including the out-of-state convictions), it is not binding as to the substantial similarity of the out-of-state offenses under N.C. Gen. Stat. § 15A-140.14(e). The State concedes that the prior driving while license revoked conviction is not within the statutory definition of a misdemeanor that may be counted for sentencing purposes, and on remand, that offense should be disregarded.

### III.  Conclusion

Defendant received a trial free from error. However, defendant's stipulation to the State's sentencing worksheet was ineffective to establish that out-of-state convictions are substantially similar to a North Carolina offense, and the trial court erred in failing to enter any findings in this regard. We thus remand this matter for a new sentencing hearing.

We deem abandoned those assignments of error not addressed in defendant-appellant's brief. N.C. R. App. P. 28(b)(6).

NO ERROR AS TO TRIAL.

REMANDED FOR RE-SENTENCING.

Judges McCULLOUGH and ARROWOOD concur.